# THE STATE ex rel. CITY OF JOPLIN v. WILLIAM W. WILDER, State Auditor.

### In Banc, March 9, 1909.

1. **MUNICIPAL BONDS: Two Propositions: Sanitary and Storm Sewers.** The proposition submitted to the people was to increase the indebtedness of the city $96,000 for the purpose of constructing a public sanitary sewer in Sanitary District No. 7 and a storm sewer in Willow Branch District in the city. Each proposed sewer was to be independent of the other, and independent of the city's original sewer system, except that a small portion of the proposed sewer in District No. 7 would discharge into the original public sewer. District No. 7 is about a half mile wide and two miles long, and lies in the west part of the city, and Willow Branch District, defined by certain natural drainage limits, is situated along a certain natural drainage course known as Willow Branch, and embraces an area of about forty blocks, bounded by District No. 7 and several other sewer districts. The two districts are not contiguous, nor do they lie in the same part of the city, nor in the same natural area, and the proposed sanitary sewer in District No. 7 would not in any manner connect with or have any relation to said storm sewer. *Held*, that the proposition submitted to the voters embraced two separate and distinct propositions in one, and the State Auditor properly refused to register the bonds.

2. ————: **District or Public Sewer.** Said sewer districts are public not district sewers, and the property of the whole city may be taxed to construct them. A sewer need not drain the whole city in order to be denominated a public sewer. A public sewer is one which serves the public, and not the individual, and which connects with and receives the discharges from district sewers and the surface waters which fall upon the streets near to or under which they run. [BURGESS, J., and VALLIANT, C. J., dissent.]

## Mandamus.

DEMURRER SUSTAINED IN PART, AND PEREMPTORY WRIT DENIED.

*Jno. J. Wolfe* and *Thomas Dolan* for relator.

(1)   Relator submits that respondent's first contention, "that the sewers hereinbefore described are not public sewers but are district sewers," is without merit.   To sustain their point counsel seem to rely upon the case of South Highland and Improvement Co. v. Kansas City, 172 Mo. 523.   But an analysis of this case will show that it does not support their position, because it does not decide that a sewer such as contemplated would not be a public sewer.   Any discussion of what is meant by public sewer was unnecessary to the decision of that case, the suit being one to enjoin Kansas City from constructing a joint district sewer.   Sec. 5847, R. S. 1899 (charter governing third class cities) provides, "The council shall have power to cause a general sewer system to be established, which shall be composed of three classes of sewers, to-wit, public, district and private sewers.   Public sewers shall be established along the principal courses of drainage, at such points, to such extent, of such dimensions and under such regulations as may be provided by ordinance, and these may be extensions or branches of sewers already constructed or entirely new throughout, as may be deemed expedient."   It will be observed that after the word "public" the word "sewers" is used, which is plural, meaning, of course, that there may be more than one public sewer.   Now, if a sewer to be a public sewer must serve the whole city, what did the Legislature mean by providing for a plurality of public sewers?   The phrase "courses of drainage" is plural, meaning more than one course of drainage.   That is to say, the city may be drained from several different directions through as many different courses, and, each course being determined by the topography of the surface, would necessarily be independent of any other course of drainage.   Therefore, no one sewer established could serve the city as

a whole because it would be physically impossible. Then, if the law is as contended for, how could such a city construct a public sewer? At what "point" begin and where end? As if to obviate any possible uncertainty as to the intention, in the same connection certain restricting or qualifying phrases are used that should remove any doubt. The words "at such points," "to such extent" and "of such dimensions" in the same sentence apparently place it beyond question that the Legislature intended to provide that public sewers should be constructed at such points along certain principal courses of drainage and of such length as the city council might in its discretion determine. That is to say, the city council has been given the discretion to construct as much or as little public sewers as they may in their judgment deem proper. An analysis of the language of this statute brushes away the contention that a sewer to be constructed as a public sewer must serve the whole city. Gilmer v. Line Point, 18 Cal. 229; Memphis Freight Co. v. Memphis, 4 Coldw. 425; Tyler v. Beecher, 44 Vt. 656; Coster v. Tidewater Co., 3 C. E. Green 63; Saddler v. Langham, 34 Ala. 323; Simonton on Mun. Bonds, sec. 35. The statute recognizes no such distinguishing features as "sanitary" sewer or "storm sewer," the terms "sanitary" sewer and "storm" sewer being used in the ordinance merely to indicate the different purposes for which the sewers were needed; the only classification made by the statute being "public" sewer, "district" sewers and "private" sewers. And in this connection we desire to call attention to Sec. 5848, R. S. 1899, which provides, among other things, that the council may cause "district" sewers to be constructed wherever the council shall deem such sewers necessary for sanitary or other purposes. Martin v. Kansas City, 110 Mo. App. 37. Where a city had authority to construct sewers, the fact that it undertook to construct

a particular sewer not a part of a general or district system could make no difference, if such sewer emptied into a natural watercourse, thus taking the place of a public sewer as an outlet, and the city in constructing and maintaining the sewer in question was acting within the scope of its authority. Foncannon v. Kirksville, 88 Mo. App. 285; Mining Co. v. Joplin, 124 Mo. 136; Abbott on Mun. Corp. p. 1110; Kansas City v. Richards, 34 Mo. App. 521; Moberly v. Hogan, 131 Mo. 19. The matter of determining these features of public sewers, as to the extent or dimensions or whether they shall be extensions or branches of other public sewers already constructed, or entirely new throughout, was left by the Legislature to the discretion of the city council. The court has nothing whatever to do with the discretion of the council in these particulars, nor in determining the question of necessity or expediency in the construction of a sewer to be used for the one purpose or both as may seem to the council necessary, provided that the council has legislative authority for doing what it undertakes to do. Cooley on Constitutional Limitations, 164; Skinker v. Heman, 148 Mo. 355; St. Louis v. Greene, 7 Mo. App. 168; Kansas City v. Richards, 34 Mo. App. 521; Abbott, Mun. Corp., pp. 2228-9; Elliott on Roads and Streets (2 Ed.), 469; Mining Co. v. Joplin, 124 Mo. 138; Heman v. Allen, 156 Mo. 534. (2) Only one proposition was submitted to the people for a vote at the special election provided for by ordinance No. 3044. The city of Joplin is proceeding under an express charter provision to establish and construct public sewers, as a part or parts of a general sewer system thereof. The city council has declared it necessary to establish and construct a public sanitary sewer in Sanitary Sewer District No. 7, in West Joplin, also a storm sewer to be known as Willow Branch Main in Willow Branch District in said city. The demurrer admits that these were necessary additions to or extensions of the sys-

tem of public sewers. If so, then the purpose to build them would be single, in that it is the enlargement of the public sewer system. Min. Co. v. Joplin, supra; State ex rel. v. Allen, 178 Mo. 576; State ex rel. v. Wilder, 200 Mo. 97. However, the difficulty of respondent seems to be to distinguish between the submission to a vote of the people a question in fact involving two or more separate and distinct propositions and the submission of a question to be voted upon, which, while involving or comprising two phases or branches, both arising out of and being in essence parts of the same object or purpose sought to be attained in the proceedings, is yet but a single proposition. Gray v. Mount, 45 Iowa 595.

*Herbert S. Hadley,* Attorney-General, and *John Kennish* and *F. G. Ferris,* Assistant Attorneys-General, for the State; *Grayston & Graham, amici curiae.*

(1) Each sewer in controversy is exclusively reserved for the drainage of an area much less than the whole city of Joplin, is available only as a means of drainage to such limited area, and is, therefore, not a public sewer. South Highland Land and Improvement Company v. Kansas City, 172 Mo. 523. (2) If it be held that said proposed sewers are public sewers, then we contend that the submission to the voters contained two separate and distinct propositions, one for the construction of a public sanitary sewer in Sanitary Sewer District No. 7 in West Joplin, and another for the construction of a storm sewer in Willow Branch District in the city of Joplin, violative of the well-recognized principle of law that "two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions." State ex rel. v. Allen, 186 Mo. 673; Gray v. Mount, 45 Iowa 591; McMillan v. Lee County, 3 Iowa 311; Board of Supervisors of Fulton Co. v. Rail-

road, 21 Ill. 373; City of Denver v. Hayes (Colo.), 63 Pac. 311; City of Leavenworth v. Wilson (Kan.), 76 Pac. 400; Farmers Loan & Trust Co. v. Sioux Falls (S. D.), 131 Fed. 912.

BURGESS, J.—The relator, the city of Joplin, filed its petition, asking this court for a writ of mandamus to compel respondent, W. W. Wilder, State Auditor, to register bonds of said city to the amount of $96,000, the respondent having refused so to do upon the ground that said bonds were shown to be invalid by the proceedings leading up to their issuance.

The city of Joplin, as appears from the petition, is a city of the third class. In 1890 a general sewer system was established in said city, since which time the corporate limits of the city have been extended, and its population greatly increased. In November, 1907, Sewer District No. 7, having been established in territory not served by the said original sewer system, and Willow Branch District having been established within the territorial limits and sewer drainage area of said original sewer system, and being in part served by a district sanitary sewer therein, the city council of said city began proceedings to bring about the construction, at public expense, of a sanitary sewer in said District No. 7, and a storm sewer in said Willow Branch District. Each such proposed sewer was to be independent of the other, and independent of the said original sewer system, except that a small portion of the said proposed sewer in District No. 7 would discharge into the original public sewer. Said District No. 7 is about one-half mile wide and about two miles long, and lies in the west part of the city of Joplin, and said Willow Branch District, defined by certain natural drainage limits, is situated along a natural drainage course, known as "Willow Branch," and embraces an area of about forty blocks, bounded by said

District No. 7 and several other sewer districts of said city.

Pursuant to an ordinance passed by the city council of said city on November 26, 1907, a special election was held in said city, at which election was submitted to the voters, as a single proposition, the question of authorizing the city council to issue city bonds to the extent of $96,000 and to levy an annual tax for their payment, for the purpose of constructing said proposed two sewers, which proposition was favored by the required proportion of voters voting thereon. The said bonds, in April, 1908, were presented to the respondent for registration, but he refused to register the bonds for two reasons given by him, to-wit:

"First: That said sewers hereinbefore described are not public sewers, but are district sewers; and,

"Second: That the question as to authorizing the issuance of said $96,000 in bonds was submitted to the voters as a single proposition upon which the voters were required to vote yes or no, while in fact said question submitted contained two separate and distinct propositions, one relative to sanitary sewer in District No. 7, and one relative to a storm sewer in Willow Branch Storm-Sewer District, which said two propositions should have been submitted singly."

Respondent, by demurrer, raises the issue whether relator's petition states facts sufficient to constitute a cause of action, and sufficient to authorize the issuing of the writ of mandamus therein prayed for.

The proposition voted on at said election was:

"To increase the indebtedness of the city of Joplin, Mo., $96,000 for the purpose of constructing a public sanitary sewer in Sanitary-Sewer District No. 7 in West Joplin, Mo., also a storm sewer to be known as 'Willow Branch' Main, and laterals thereto, in Willow Branch District in said city, all to be done according to the plans therefor now on file in the office of the city clerk of said city, and to purchase the necessary

grounds and rights of way therefor; and authorizing the issuance of bonds therefor, the levy of an annual tax sufficient to pay the interest on said bonds as same shall fall due, and to constitute a sinking fund for the payment of said bonds.''

It is clear that said Sewer District No. 7 is in area much less than the city of Joplin, within which it lies, and as the sewer contemplated would be available only as a means of draining such limited territory, it cannot be regarded as a public sewer. As to Willow Branch District, in which it is purposed to construct said storm sewer for the drainage of surface water, it is entirely within the original limits of said city. This sewer would have an outlet of its own into Joplin creek. It would in no way be connected with the original sewer system, or with said sanitary sewer in District No. 7, and would drain but a small part of the territory lying within the original limits of said city. For sanitary purposes, however, a part of said Willow Branch District is now served by a district sewer which is connected with and part of the original sewer system.

It is apparent that neither of said proposed sewers was included within, or contemplated by, the general sewer system originally established by said city, and that neither constitutes a system or part of a system for the benefit of the entire city. The property of the whole city can only be taxed to pay for the construction of said proposed sewers upon the theory that they are public sewers, for the benefit of the general public. Ordinance No. 3044, on which said bond issue is based, does not describe said proposed storm sewer in Willow Branch District as a public sewer, and while said ordinance denominates the sewer proposed to be constructed in District No. 7 as a ''public sanitary sewer,'' it is a district sewer, and the council of said city had no authority to authorize the construction of a district sewer at public expense.

In South Highland Land & Improvement Co. v. Kansas City, 172 Mo. 1. c. 534, a public sewer is defined by VALLIANT, J., as follows: "It is a sewer open and available to the whole city, and not limited to any particular part. In a sense a sewer that drains one-fourth of a large city is of benefit to the whole city. But that is true in the same sense of a small district sewer, or even of a private sewer. For if a small district, or even an inhabited private house, becomes in an unsanitary condition, its injurious influence is extended beyond its own limits. If a sewer is available as a means of drainage to an area less than the whole, even if it were physically possible to drain the whole into it, it is not a public sewer. And this is so regardless of its dimensions."

But there is another reason why a peremptory writ should not be awarded in this case, and that is that the proposition submitted to the voters embraced two separate and distinct propositions; one for the construction of a public sanitary sewer in District No. 7, in West Joplin, and another for the construction of a storm sewer in Willow Branch District, in said city. In the way this was submitted to the voters, they had no alternative than to vote, if they voted at all, for or against both propositions. They could not vote for one and against the other, however much they might have desired to do so.

In State ex rel. v. Allen, 186 Mo. 673, the proposition voted upon at the election was "for said city to become indebted in the sum of twelve thousand dollars in excess of its annual revenue, for the following purposes, to-wit: Forty-five hundred dollars to be used for the purpose of purchasing a site and the erection and construction of a public building thereon or the purchase of a site and building to be used for a city hall, city prison and hose house and for furnishing the same, and the further sum of seventy-five hundred dollars to be used in making repairs and improvements

in waterworks and electric light plant and extension of water mains and electric lines belonging to said city.'' This was all submitted as a single proposition. It was held that this submission contained at least two separate and distinct propositions, one for an increase of municipal indebtedness to a certain amount for one purpose, and another for an increase of municipal indebtedness for another and different purpose, and ''that two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions as voters thereby might be induced to vote for both propositions who would not have done so if the questions had been submitted singly (21 Am. and Eng. Ency. Law (2 Ed.), 47, a principle recognized by this court in the recent case of State ex rel. v. Allen, 178 Mo. 555.''

The voters should have been given the opportunity to vote for and against each object. As submitted, the voters could vote for or against both, but not for one, and against the other. The property-owners in District No. 7 were not, it is clear, interested in the proposed storm sewer in Willow Branch District, for said two districts are not contiguous, nor do they lie in the same part of the city, nor in the same natural drainage area; and the proposed sanitary sewer in District No. 7 would not in any manner connect with or have any relation to said storm sewer; nor would the citizens of Willow Branch District have any interest in the proposed sanitary sewer for District No. 7; nor would the people of the city of Joplin, outside of said proposed sewer districts, be served or benefited by either of them.

On the first paragraph, *Valliant, C. J.*, concurs with *Burgess, J.*, in holding that the sewers are not public sewers, but *Fox, Lamm, Graves, Woodson* and *Gantt, JJ.*, dissent, and are of the opinion that the sewers are public sewers. As to the second paragraph, all concur.

Our conclusion, therefore, is that the demurrer to the first paragraph should be overruled, from which *Burgess, J.,* and *Valliant, C. J.,* dissent; but as to the second paragraph, the demurrer should be sustained, and the proceedings dismissed. It is so ordered.

## SEPARATE OPINION.

WOODSON, J.—I concur in the results reached by the court in the opinion filed herein; but I most earnestly dissent from the meaning given therein of the words "a public sewer."

Natural formations and the laws of gravity give to each and every city a course of natural drainage, and the object and purpose of the law must be viewed and interpreted in the light of those natural conditions.

It often happens that a city has but one natural course of drainage, but frequently cities have two or more; and some of them are built upon sites, which from the contour and physical conditions of the earth's surface, have different watersheds, draining the waters from one portion of the city in one direction to the natural course of drainage, and another which drains the waters of another portion in another and different direction, yet to the same course of drainage.

For instance, take the city of St. Joseph (and I take that city because I am familiar with the conditions as they there exist): it is located in a valley and on the bluffs on the east banks of the Missouri river. The land upon which the city is located slopes to the west, and, of course, the natural course of drainage is the river, which washes her western shores from the north to the south. The city is about six miles in length, north and south, and about three in width, east and west. About one and a half miles south of the north end of the city there is a creek,

called Black Snake. That creek rises in the eastern portion of the city and runs a little south of west and empties into the Missouri river. The ground upon which the north half of the city stands is divided from east to west by Black Snake, and that lying north of the creek drains south into the creek, and that lying south of Black Snake drains north and into the same creek, and through that creek into the river.

The central eastern portion of the city is much higher than the river and is much higher than Black Snake creek, and is also much higher than the south half of the city, thereby creating a high divide between the north half and the south half of the city. At a distance of about one and a half miles south of this divide there is another creek, running from east to west and emptying into the Missouri river. This creek is called Mill creek. The land lying between the divide and this creek drains to the south and west into this creek; and much of that lying south of the creek drains north into the same creek. The divide separating these two creeks is very high, from one hundred to two hundred feet, and probably a mile and a half wide, thereby forming a physical obstruction between the two creeks which renders it impossible to connect the two with a sewer without tunnelling through the divide, which would cost more than the city could possibly pay.

I have not attempted to speak accurately regarding the contour and drainage of the land upon which the city of St. Joseph is located, but I have sufficiently indicated the general situation for the purpose of illustrating the question under consideration.

Recognizing the natural formation of the surface of the ground, the city of St. Joseph, under the Charter of Cities of the Second Class, established two public sewer systems; one called the Black Snake Sewer, and the other the Mill Creek Sewer. The city

converted those two creeks into sewers, and from the sides of each the city constructed large lateral sewers connecting therewith. None of these sewers connect with private sewers, that is, sewers or drains leading from houses or other private property, but connect only with the district sewers of the city. The private sewers drain or lead from private property and connect with and are discharged in the district sewers, and all district sewers connect with and are discharged into either the Black Snake or Mill creek sewer, or some one of the laterals, before mentioned. The Black Snake sewer and its said laterals constitute one of the public sewer systems of the city of St. Joseph, and the Mill creek sewer and its laterals constitute the other. Neither of those systems serve private persons or drain private property, but only receive the discharges from the district sewers, and such surface water as may flow into the inlets along or near the streets under which they pass. Both of these public sewers discharge into the Missouri river, and in that manner give the city an ideal drainage system.

But if I correctly understand that portion of the opinion before mentioned, then neither Black. Snake nor Mill creek sewer is a public sewer, for the reason that each of them drains only a portion, not the entire city. If that is the correct meaning of a public sewer, it is a physical impossibility to have a public sewer in the city of St. Joseph, because no sewer can possibly be constructed which would drain the entire city. In my judgment that is neither the meaning nor the common sense of the law; but upon the other hand, in my judgment, the city, under the law, has the right to construct as many public sewers as the necessities of the city may demand, each local in the sense of the area drained, but public in character, not serving individuals or private property but the public.

If a sewer must drain the entire city, as the opinion seems to me to hold, before it can be public in character, then it would be impossible under the law to construct in any one city more than one public sewer, and none in most of them. If a sewer must drain the entire city before it can become a public sewer, then there is no possible room for another, and if the physical formation of the earth is such that one sewer cannot be so constructed as to drain the entire city, then that city, and all similarly situated, have no power whatever to construct a public sewer.

In my judgment a public sewer is one which serves the public, and not the individual, and which connects with and receives the discharges from district sewers, and the surface waters which fall upon the streets near to or under which they run.

Substantially the same conditions exist in Kansas City and St. Louis. To my mind it would be against all reason and common sense to say the city of St. Louis has no power to construct a public sewer in South St. Louis, because it would be a physical impossibility for it to drain the entire city, including North St. Louis, which is perhaps twenty miles away.

While I believe the result reached by Judge Burgess is correct, I dissent from what is said as to what constitutes a public sewer.

*Graves, Gantt* and *Lamm, JJ.,* concur.