JAMES W. SCHWABE, Respondent, v. W. P. MOORE et al., Defendants; W. P. MOORE, JOHN S. BICKNELL and W. E. SMITH, Appellants.

Kansas City Court of Appeals, February 1, 1915.

1. **MUNICIPAL CORPORATIONS: Cities of Third Class: Purchase of Sewer.** A city of the third class having power to construct and pay for a public sewer out of the general funds, can purchase a sewer already constructed provided it is suitable and can be used for public sewer purposes.

2. ———: ———: ———: **Public or District Sewer.** A sewer does not have to accommodate an entire city to be a public sewer. A sewer built according to public sewer specifications of the city, that fits into the general sewer system of the city, that serves tl e public, and that will drain a large area of the city when other sewers are established, is a public and not a district sewer.

3. ———: ———: ———.. The city's purchase of such a sewer does not violate Section 2778, R. S. Mo. 1909, requiring a

contract to be in writing and made upon a consideration wholly to be performed subsequent to the making of the contract. A deed conveying the sewer to the city together with an ordinance passed for the purchase thereof constituted a written contract for the present purchase of existent property and not for any public work to be done or improvement to be made pursuant to the contract.

4. ————: Legislative Acts: Interference of Courts. Where there is no fraud, the acts of the city's legislative body are conclusive upon the courts unless the municipal act is so unreasonable, oppressive, and subversive of the rights of the citizen, as to clearly indicate and leave but one inference, that of an attempted abuse rather than the legitimate use of a power enjoyed, that the courts will interfere.

5. PLEADING: Equity: Injunction: Petition: Reply. A petition cannot be eked out by a reply. Plaintiff must recover, if at all, upon the grounds stated in the petition, and not on those stated in the reply.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED (*with directions*).

*W. M. Dinwiddie* and *McBaine & Clark* for appellants.

*Walker & Walker* for respondent.

TRIMBLE, J.—Respondent, as a taxpayer of Columbia, brought this suit in behalf of himself and other taxpayers caring to join with him, against the mayor, city clerk, and city treasurer of Columbia, and against the city councilmen of said city, to enjoin the first three named officers from issuing and paying a warrant for $278.25 to Hamilton-Brown Shoe Company, duly authorized and appropriated by ordinance, as a payment upon account of the purchase price of a sewer bought by the city of Columbia from said Shoe Company, March 19, 1907; and also to enjoin all of the defendants, as such city officers, from passing any ordinances in the future authorizing warrants or ap-

propriating money to pay for said sewer; which future ordinances, the petition alleges, the said officials are threatening to pass in order to appropriate the large sum of $3000 to be used in completing payment for said sewer.

The only grounds alleged in the petition as a basis for plaintiff's right to an injunction are that the passage of said ordinances and the issuance and payment of said warrants will work an irreparable injury to plaintiff and other taxpayers, and that "said sewer is a sewer constructed about the year 1907, by and at the expense of the Hamilton-Brown Shoe Company, a private corporation for its private use; that the said sewer was constructed by authority of the city council of the city of Columbia as a private sewer; that said sewer was by deed, dated March 5, 1907, dedicated to the city of Columbia by said Hamilton-Brown Shoe Company; that said sewer does not fall within any other classification of sewers made by the statutes of this State, relating to cities of the third class, and there is no authority of law for payment out of the revenue of said city of the cost of its construction:" that " the aforesaid ordinance was, and the proposed ordinance will be, passed without authority of law; that said city council had and has no authority to pass an ordinance for such purpose; that it is, and will be, an appropriation of the public revenues for private benefit contrary to law;" that "unless defendants Moore, mayor, and Bicknell, clerk, are restrained and enjoined from issuing, and said Smith, treasurer, from paying said warrant, said amount will be so paid and diverted from the public revenues."

The three first named officials, who are the appellants herein, filed a separate demurrer to the petition on the general ground that it did not state a cause of action. The other defendants demurred also. Both demurrers were overruled. All the defendants, in-

cluding appellants, then answered setting up the ordi-
nances purchasing the sewer and authorizing the issu-
ance of the warrant and the payment of said $278.25.
In said answer it was admitted that, unless restrained
by injunction, the officers would pay said warrant to
the Shoe Company.

Upon a trial of the case, the chancellor dismissed
the petition as to the members of the city council, but
rendered judgment making the temporary writ of in-
junction final as to appellants, the mayor, clerk, and
treasurer, and they were perpetually enjoined from
signing, issuing, and paying the warrant described in
the petition or any other warrant for like purpose.
These three officials have duly appealed.

The respondent has not thought it worth while
to furnish us any assistance in the case by filing a
statement and brief in support of his side. We do not
know whether this failure to file briefs arises from re-
spondent's belief that the correctness of the judgment
is so apparent and self evident as to require no effort
on his part, or whether such failure is born of a settled
conviction that the judgment cannot be maintained.
In either case, however, his silence adds much to our
labors in dispatching the business of the court and af-
fords him no compensation for thus standing mute.

Upon receiving a petition from the Hamilton-
Brown Shoe Company for permission to lay a sewer
over certain streets, the city council, on February 5,
1907, by ordinance, granted said company permission
and authority to construct a private sewer with all
necessary manholes, lampholes, handholes, flushtank,
and other appurtenances, beginning and emptying into
the manholes in the main trunk sewer at the intersec-
tion of Hickman avenue and Fifth street, thence over
certain other specified streets to the center of Fay
street at its intersection with Wilkes boulevard. The
ordinance provided that the sewer should be con-

structed in accordance with plans and specifications prepared by the city engineer; that it should be of a certain diameter, and constructed of a particular kind of earthenware sewerpipe; and that the Shoe Company should keep said sewer in good order and restore the streets along its route to the satisfaction of the street commissioner. The last section of said ordinance reads as follows:

"Sec. 3. The city of Columbia may at its option purchase the said sewer provided said sewer is adequate for public sewer purposes.'

Shortly thereafter the Shoe Company let the contract for the construction of the sewer for $3300, and it was constructed in strict accordance with the requirements of the ordinance and under plans prepared by the city engineering department. The sewer was 3540 feet in length. The contract for its construction included nothing for connections to private property, but was merely for the construction of the sewer, with necessary appurtenances, from the beginning point in a public street to the sewer's termination in a public street. The Shoe Company paid for said sewer the price called for in the contract which was shown to be reasonable and just.

On March 19, 1907, the Shoe Company executed a deed conveying the sewer to the city and filed it with the city clerk to be delivered to the city. It was laid before the city council on March 19, 1907, and on that date an ordinance was passed accepting the deed. Said ordinance further recited that "in consideration of the dedication of said sewer to the city for public sewer purposes, the city of Columbia, Mo., hereby binds itself to re-imburse the said Hamilton-Brown Shoe Company for the amount expended by said Company in constructing said sewer, to-wit, the sum of $3278.25, said amount to be paid out of first money, which in the

opinion of the city council is available for sewer purposes.''

On December 2, 1913, the council passed an ordinance appropriating $278.25 out of the General Revenue Fund not otherwise appropriated, ''to be applied as a payment on Hamilton-Brown sewer, and that a warrant be drawn upon said fund for the purpose of paying same.''

As stated before, we are not furnished with a statement of respondent's views on the validity of the warrant and hence we can consider only such objections thereto as may be gleaned from a consideration of the petition, or which may occur to us in our investigation of the subject in hand.

The first question that presents itself is as to the power of Columbia to buy a sewer.

Columbia is a city of the third class and was such in March, 1907. Under section 5751, Revised Statutes 1899, it had power to ''purchase, receive and hold . . . any property, real or personal, it now owns or may hereafter acquire.'' Under section 5858, Revised Statutes 1909, it had power to construct and pay for public sewers out of the general revenues of the city.

It would seem that if the city has the power to construct a sewer, it would have the right to buy a sewer already constructed, provided it could be used and devoted to public purposes. [State ex rel. v. City of St. Louis, 169 Mo. 31; Akers v. Kolkmeyer, 97 Mo. App. 520.] The sewer unquestionably came within the requirements necessary to constitute it a public sewer. [State ex rel. v. Wilder, 217 Mo. 261.] The evidence showed, without contradiction, that it fitted in with the general sewer system of the city and could be used to advantage in connection therewith; also that every portion of it came wholly within the terms and definition of a public sewer, and no portion of it in-

cluded any attachment thereto for private use. The evidence further shows that its purchase by the city was conditioned upon the fact that it was suitable for a public sewer and adequate therefor, and that the committee appointed by the council to investigate that question so found and so reported to the council; and it was bought for public sewer purposes. In addition to this, it was built in accordance with the public sewer specifications of the city. The testimony also shows that four district sewers empty into it, that it serves the public, and that it will drain a large area of the city when other district sewers are established therein and connected with the sewer in question. A sewer does not have to accommodate the entire city to be a public sewer. [State ex rel. v. Wilder, 217 Mo. 261; Southworth v. Mayor of Glasgow, 232 Mo. 108, l. c. 128.]

It cannot be said, therefore, that the sewer in question is a mere district sewer. The sewer system of Columbia is divided into public sewers and district sewers. And, since the public sewers are constructed and paid for by the city out of the public funds, while the district sewers are paid for by special assessments levied on property in the respective sewer districts, (under section 5448, Revised Statutes 1899, now section 9241, Revised Statutes 1909), there might be some question whether the city could pay for a district sewer out of the general public funds, instead of levying a special sewer tax therefor in accordance with the section in relation to district sewers. We do not here decide that the city could not construct or purchase a district sewer. We merely say that there might be some question of its power to do so. But if there is such a question, it has no application here since the sewer in question can in no sense be termed a mere district sewer. So that if respondent's objection to the city's purchase of it is based on the contention that it

is, in fact, a mere district sewer there is no merit in such objection.

Nor does the city's purchase of the sewer violate the provisions of section 6759, Revised Statutes 1899, (now section 2778, Revised Statutes 1909), which requires a contract of the city to be in writing and made upon a consideration wholly to be performed subsequent to the making of the contract. There was a written contract. There was a deed made by the Hamilton-Brown Shoe Company and filed with the city clerk for delivery to the city. Simultaneously therewith an ordinance was passed by the city by the terms of which the city agreed to pay a certain price for the sewer. This constituted a written contract. [Platte City v. Paxton, 141 Mo. App. 175, l. c. 182; City of California v. Telephone Co., 112 Mo. App. 722.] This contract was not for any public work to be done, or repairs or improvement to be made pursuant to the contract but is "simply a contract for the present purchase of existent property" needed by the city for public sewer purposes. [State ex rel. v. St. Louis, 169 Mo. 31, l. c. 37.] The contract was to buy a public sewer. Of course there must be a consideration, else the city could not pay money pursuant to such contract. But the consideration of the payment is the delivery of the deed to the city and the city's ownership and use thereafter as a public sewer. [Morrow v. Pike County, 189 Mo. 610.]

There was no fraud or evasion of the law in the case, so far as we can discern from the record. The council carefully investigated the sewer to see if it could be used for public purposes as a public sewer. It found that it could, and made a straight out purchase thereof. The evidence was that the price agreed to be paid for it was reasonable and certainly no more than it would cost to build it. Where there is no fraud, the acts of the city's legislative body are conclusive

187MoApp6

upon the courts not only in collateral, but also in direct, proceedings; it is only in "those cases where the municipal act is so unreasonable, oppressive, and subversive of the rights of the citizen in the general purpose declared, as to clearly indicate and leave but one inference, that of an attempted abuse rather than the legitimate use of a power enjoyed," that the courts will interfere. [Heman v. Schulte, 166 Mo. 409, l. c. 417.] To the same effect is McGhee v. Walsh, 249 Mo. 266.

The power of the city to purchase the sewer cannot be denied upon the ground that the revenue of the year 1907 (the year the contract was made), was insufficient for that purpose; nor can the validity of the particular warrant now involved be questioned on the ground of the insufficiency of the revenues of 1913. In the first place, it does not appear from the evidence that the revenues were insufficient; on the contrary, so far as the evidence on this subject shows, they were sufficient. In the next place, the petition does not present that question. After the trial had commenced, plaintiff filed a reply in which an attempt was made to set up the insufficiency of the revenue, but, it is well settled that a petition cannot be eked out by a reply. This is no way to amend a petition. A plaintiff must recover, if at all, upon the cause of action stated in the petition and not upon one stated in the reply. [Mathieson v. St. Louis and San Francisco R. Co., 219 Mo. 542, l. c. 552; Ham v. St. Louis etc. R. Co., 149 Mo. App. 200; Moss v. Fitch, 212 Mo. 484 l. c. 502.]

Since we have been unable to discover in the record any good ground for interfering with the acts of the municipal authorities, or for declaring void the legislative acts of the municipality under which the municipal officers were intending to issue the warrant in controversy, we are of the opinion that the judgment of the chancellor should be reversed and the cause re-

manded with directions to dismiss the bill for injunction. It is so ordered. All concur.