RUSH, RESPONDENT, *v.* GRANDY, COUNTY TREASURER, ET AL., APPELLANTS.

(No. 5,022.)

(Submitted January 26, 1923. Decided February 21, 1923.)

[213 Pac. 242.]

*Injunction—Cities and Towns—Public Sewers—Cost of Con-struction—How Provided for.*

Cities and Towns—"Trunk" Sewer is Public Sewer.
    1. A "trunk" sewer, *i. e.,* one which receives the discharge from district sewers, is a public sewer within the meaning of section 15, of Chapter 89, Laws of 1913.

Same—Public Sewer—Cost of Construction—How Paid.
    2. The cost of constructing a public sewer, as distinguished from a district sewer, must be provided for, under section 15, above, either from the general or sewer fund or by the sale of bonds, and may not be assessed on the basis of area under the special improve-ment district plan provided by section 14 of the Act.

*Appeals from District Court, Wibaux County; C. C. Hurley and S. C. Felt, Judges.*

---

2. Right of municipal corporation to acquire funds for establishing drains and sewers by assessment, see note in 60 L. R. A. 227.
    Purposes for which municipality may levy assessments, see note in 16 Am. St. Rep. 365.

ACTION for injunction by *Thomas R. Rush* against *Jean M. Grandy*, as County Treasurer, and others. From a judgment for plaintiff and an order overruling their motion for new trial, defendants appeal. Affirmed.

*Mr. Stephen J. Leahy*, for Appellants, submitted a brief, and argued the cause orally.

*Messrs. Hildebrand & Warren*, and *Messrs. Templeman & Sanner*, for Respondent, submitted a brief; *Mr. Sydney Sanner* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

This action was brought by the plaintiff against the defendants to restrain them from selling his lands for taxes levied by the defendant town of Wibaux under certain proceedings taken by it for the creation of a special improvement district. The facts in the case, so far as we deem it necessary to consider them in arriving at our conclusion, are disclosed either by admissions in the pleadings or by undisputed testimony introduced at the trial, and are as follows: Wibaux is an incorporated town under the laws of the state, located in Wibaux county. Defendant Grandy was county treasurer of the county, and defendant Paige was town treasurer of the town of Wibaux. The plaintiff was the owner of 100 acres of land embraced within the corporate limits of the town of Wibaux, which he used for agricultural purposes, none of it being platted into lots or blocks, and the only buildings thereon were his house and barn. A very large portion of this land was separated from the occupied and inhabited portion of the town site by a stream of considerable size, known as Beaver Creek. On April 26, 1915, the town council adopted a certain "resolution of intention to create the town of Wibaux, Montana, as a sewer special improvement district for the purpose of constructing trunk sewers in and for said town so as to provide for levying a special assessment upon all of the property within

said district benefited thereby.'' Among other things, the resolution recited that it had been found that in order to construct the sewer the sum of $14,000 would be needed, which amount should be charged against the lots or parcels of land within said district in such proportion as the area of each of such lots and parcels of land, respectively, bore to the whole area of the entire district, exclusive of streets, alleys and public places, following which recital was a declaration to the effect that it was the intention of the town that all of the lots and parcels of land situate therein should be constituted as a sewer special improvement district for the purpose of constructing a system of trunk sewers on Wibaux Street in said town according to specifications and details on file in the office of the town clerk, and that the lots and parcels of land should each be charged and assessed for the cost of said improvement in the proportion set forth in the above recital. The resolution also fixed a time for hearing protests against the creation of the special improvement district.

The plans, specifications and details referred to in the resolution showed that the contemplated sewer was about seven blocks in length, extending along Wibaux Street, and that it could and would serve as the outlet of district sewers if they should be constructed in the future.

At the trial, former Mayor Bushell and three witnesses who were members of the council at the time the proceedings were had for the creation of this improvement district testified that the sewer was built as a main line sewer, into which district sewers, when constructed, would discharge their sewage, and that the plaintiff could not benefit from its construction until a special improvement district was created to construct a district sewer from his land to connect with it.

Subsequent to April 26th such proceedings were had by the town council that on August 4, 1915, it passed and adopted its resolution No. 8, ''creating the town of Wibaux, Montana, as a sewer special improvement district for the purpose of constructing a trunk sewer system in and for said town so as

to provide for levying a special assessment upon all of the property within said district benefited thereby.'' On September, 13, 1915, the town council passed a resolution wherein assessments against the lands embraced in the improvement district were made, and the twenty-third day of September, 1915, at 8 o'clock P. M. was fixed as the time for hearing of objections to the final adoption of the resolution, and at the time last mentioned the council met and adopted its resolution No. 11 which, amongst other things, levied an assessment against the plaintiff's lands, amounting to the sum of $2,501.53, to be paid in annual installments of $312.69 for a period of eight years, beginning on November 30, 1916; the same constituting between one-fifth and one-sixth of the whole cost of the sewer. Under the proceedings above indicated a contract was let and the sewer constructed.

Resolution No. 11 was duly certified to the treasurer of Wibaux county, Montana, with instructions that he collect the amount therein indicated, including the amount levied against the plaintiff's lands, with the other taxes and assessments of the town of Wibaux as provided by law. The plaintiff did not pay the amount of the assessment so levied against his land, and on or about the twenty-first day of December, 1916, the defendant county treasurer proceeded to take steps for the sale of the land to discharge the amount levied thereon.

Subsequent to the construction of the sewer and the levy of the assessment upon the plaintiff's lands, the town council amended resolution No. 11 so as to deduct from the total assessment therein provided the sum of $4,200, which amount had been assessed to the owners of property abutting the sewer on Wibaux Street, who had been authorized by appropriate resolutions of the council to use the same as a district sewer, by which action the plaintiff's assessment was reduced to ten-fourteenths of the original amount levied.

The plaintiff filed his complaint in the district court setting out the above facts, together with others which we do not deem it necessary to consider, and asked the court to decree that the

proceedings of the town council in the creation of said improvement district and the levy of the assessment upon his land were illegal, and to enjoin the defendants from selling the same to satisfy the assessment levied upon it thereunder. A temporary restraining order was issued, and thereafter the defendants filed their answer, and a trial of the issues was had before the court, sitting without a jury.

The trial judge made findings to the effect that the sewer in question was a "main line or trunk sewer"; that the same could not be constructed under the special improvement district plan and ordered judgment to be entered in favor of the plaintiff, restraining the defendants from proceeding further in collecting the taxes levied against his property under the special improvement district proceedings above set forth. Judgment was duly entered in accordance with the findings of the court. The defendants made a motion for a new trial, which was denied, and from this judgment and order have appealed to this court.

The proceedings of the town council in creating special improvement district No. 1 were had under the provisions of Chapter 89 of the Session Laws of the Thirteenth Legislative Assembly, p. 393. The attempted levy of the assessment upon the plaintiff's property was made under the provisions of paragraph (a) subdivision 1, of section 14 of this Act (page 400) (Rev. Codes 1921, sec. 5238), which authorized the council to assess the entire cost of the sewer against the lots, pieces, or parcels of land embraced in a special improvement district in the proportion which the area of each bore to the area of the entire district, exclusive of streets, avenues, alleys and public places.

Section 15 of the above Act provides: "A sewer system may be established in a city, which system may be divided into public, district, and private sewers.

"Public sewers may be established and constructed along the principal course of drainage at such times, to such an extent, of such dimensions and material, and under such regulations as

may be prescribed by the council; and there may be constructed such branches and extensions of sewers already constructed, or to be constructed, as may be considered expedient.

"To defray the cost of such public sewers, the council may appropriate moneys therefor from the general or sewer fund, or by availing itself of moneys derived from a bond issue authorized by the Constitution and laws of the state.

"It is further provided that when a public or main sewer also serves as a district sewer, the city council may assess the property bordering or abutting upon such public sewer either at the time of its construction or at any future time for an amount equal to the estimated cost of such district sewer capable of accommodating such property." (Rev. Codes 1921, sec. 5239.)

Two questions present themselves for our consideration: (1) Was the sewer so constructed a public sewer? (2) If it was, could payment for it be provided under the special improvement district plan which was adopted?

The sewer was referred to in the council proceedings and [1] in the findings of the court as a "trunk" sewer. We have not been able to find a legal definition of a trunk sewer, but in general usage we would say that it is one which bears the same relation to an entire sewer system that the trunk of a tree bears to its branches, or the main stream of a river bears to its tributaries, and the word is so used by eminent writers. The English historian Arnold, in his history of Rome (Chap. 5, p. 21), speaking of the sewer system of the imperial city, says: "The foundations of the work were laid about forty feet under ground, its branches were carried under a great part of the city and brought at last into one grand *trunk* which ran down into the Tiber."

A sewer which serves the public and connects with and receives the discharges from district sewers is a "public sewer." (*Southworth* v. *City of Glasgow*, 232 Mo. 108, Ann. Cas. 1912B, 1267, 132 S. W. 1168.)

So in this case, considering the testimony of Mayor Bushell and the members of the town council who had to do with the proceedings leading up to the building of the sewer, that, though it was designated as a trunk sewer, it was in fact intended to serve as the outlet of the district sewers thereafter to be authorized and built, there can be no doubt that the sewer was, and was intended to be, a public sewer, and that the trial judge, in using the words "main line or trunk sewer" in his findings, meant nothing more nor less than that the same was a public sewer. The fact that after the assessment in question was made it was modified so as to impose a greater share of the cost upon abutting property owners along Wibaux Street because they were using the trunk sewer as a district sewer emphasizes and confirms this conclusion. If it were otherwise, the additional burden could not have been imposed upon the abutting property under the last paragraph of section 15, *supra*. That it was referred to in the proceedings and in the court's findings as a "trunk sewer" does not change the fact, and we hold that the court's finding amounted to a determination that it was a public sewer.

Having determined that it was a public sewer and not a [2] district sewer, it follows that the cost of constructing the same should have been provided for by the town as specified in the third paragraph of section 15, *supra;* that is, from the general or sewer fund or by availing itself of moneys derived from the sale of bonds.

The provision in the last paragraph of section 15 that when a public sewer also serves as a district sewer, the council may assess a proportionate part of its cost to the bordering or abutting property, is a forcible legislative pronouncement to the effect that in no other case can the cost of constructing a public sewer be so assessed, and that it cannot be assessed on the basis of area under the special improvement district law.

"The difference between a public and district sewer is not a mere difference in name, but it is a physical fact, so that the municipal legislative body cannot authorize what is in fact

a public sewer and by merely denominating it a district sewer tax the cost of construction on the lots in the districts named. Such an act would be a fraud and the special tax bills issued in pursuance of it would be void." (McQuillin on Municipal Corporations, sec. 1425.)

Many cases may be found to support our conclusion, but we cite only *Hill* v. *Swingley,* 159 Mo. 45, 60 S. W. 114; *Chicago* v. *Law,* 144 Ill. 569, 33 N. E. 855; *Hughes* v. *Momence,* 163 Ill. 535, 45 N. E. 302; and refer also to McQuillin on Municipal Corporations, sec. 1425 *et seq.;* 28 Cyc. 1108, 1109, and notes; Cooley on Taxation, Chapter 20; and Dillon on Municipal Corporations, 4th ed., Chapter 19.

We have not examined the proceedings of the town council, except as they are shown by the pleadings, as it was not necessary to do so in order to pass upon the decisive question in the case, and nothing herein stated is to be construed as determining their regularity or irregularity.

For the reasons above given, the trial judge was right in his determination of the case. The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.