CRUTCHFIELD, Appellant, *v.* NÅSH et al., Respondents.

(No. 6,490.)

(Submitted April 17, 1929. Decided April 27, 1929.)

[276 Pac. 938.]

*Mr. Howard Toole,* for Appellant, submitted a brief and argued the cause orally.

*Mr. E. C. Mulrone* and *Mr. T. N. Marlowe,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a judgment refusing to enjoin the defendant contractor and the city of Missoula from constructing a sanitary sewer trunk line as a special improvement district project.

Missoula, a city of more than 16,000 population, is bisected by the Missoula River; one-half of her people reside south of the river. The north side has had an adequate sewer system for years, but the south side is still compelled to rely upon cesspools and the like. Prior to 1927, two attempts to create improvement districts for the installation of a sewer system on the south side met with failure, and in that year a committee of fifteen met with the council to devise ways and means of securing this necessary improvement. The plan evolved was to first ascertain whether the people of the south side would sanction a district, including practically the entire south side, for the construction of a main trunk line, which, when later connected up by district sewers and laterals, would serve to carry off all of the sewage from all parts of the district traversed by the main lines, and, if this could be done, to

immediately organize lesser districts, within the grand district, for the construction of the district sewers and laterals.

Pursuant to this plan, a petition was presented to the council for the creation of a special improvement district, to include practically all of the south side. The council acted favorably upon the petition, secured the services of a competent engineer, who drew plans and specifications showing the main trunk line and necessary subtrunk lines to accommodate the topography of the district, and all necessary laterals to finally render the system available to all property to be included within the district, and passed a resolution of intention to create a district for the "construction and installing of a main trunk line and subtrunk lines of sanitary sewers for a sanitary sewer system of sufficient size, dimensions and capacity to receive, carry off and dispose of the sewerage from that portion of the city" described. The estimated and advertised cost of the improvement, exclusive of engineering, was $123,685.44.

Due notice of hearing was given, and but eight per cent of those qualified protested the creation of the district; these protests were overruled, and a resolution of creation was duly passed. All intermediate steps were regularly taken, and a contract was finally let to the defendant contractor for the complete construction of the trunk line, as shown on the plans and specifications, but at a contract price of $155,840.25, exclusive of engineering, or an excess of approximately twenty-seven per cent over the estimate. The work was to be paid for by city warrants, and, after the contract was let, the contractor agreed to sell the warrants received, or to be received, at 91 cents on the dollar.

Within sixty days after the contract was awarded, plaintiff filed written protest and notice of alleged defects in the proceedings, among which were (1) that the sewer system provided for therein is, in law and in fact, a public sewer, the cost of which cannot be assessed against the property within the proposed district under the "special improvement district" law; (2) that the contract price is largely in excess of the

estimated cost, and (3) that, in addition to the actual cost of construction, plus a fair profit, the contractor included in his bid, contrary to law, a large sum to cover the anticipated discount of warrants to be received in payment. These objections were overruled, and thereafter plaintiff commenced action to enjoin the construction of the sewer as a special improvement project.

The evidence adduced clearly disclosed that the work contemplated within the district was but the construction of the main trunk line sewer, with such branches as were made necessary by the conformation of the land, and would not serve plaintiff's lot, or a majority of the lots within the district, until the laterals sketched upon the map of the district should be constructed under proceedings for the creation of local districts within the trunk line district.

On the evidence the court found that the intended improvement "consisted of a complete trunk sewer system, consisting of a main or trunk sewer and district main sewers, submain sewers and intersecting sewers, with necessary ditches, drains, manholes and outlets," etc. The court further found that, taking into consideration certain changes made in materials to be used and delay in letting the contract, the contract price was not unreasonably excessive, and that the successful bidder did not add to the actual cost, plus a reasonable profit, any sum to take care of discount on warrants, and concluded, as a matter of law, that the proceedings were "regular, valid and legal," and that plaintiff was not entitled to an injunction.

Judgment being entered in accordance with the findings of fact and conclusions of law, plaintiff appealed from the judgment. His counsel now raise the three questions, suggested by the objections filed, as reasons why the judgment should not be affirmed.

1. Counsel for defendants contend that, as plaintiff did not appear before the council and protest the inclusion of his property in the district before its creation, he is now estopped from questioning the validity of the acts of the coun-

cil; in this they rely upon *Power* v. *City of Helena,* 43 Mont. 336, 36 L. R. A. (n. s.) 39, 116 Pac. 415. In the *Power Case* the jurisdiction of the council was not questioned, but only the legality of the inclusion of plaintiff's property, which he asserted was not benefited by the improvement, within an improvement district; having failed to avail himself of the method provided for testing the validity of the inclusion of his property, he was estopped from maintaining an action to determine the question. The situation of the plaintiff here is very different.

Section 5237, Revised Codes 1921, within the chapter regulating the creation of special improvement districts (Chap. 56, Part 4, Political Code), provides that, in proceedings such as these, "at any time within sixty days from the date of the award of the contract any owner * * * who claims that any of the previous acts or proceedings relating to said improvements, are irregular, defective, erroneous, or faulty, * * * may file with the city clerk a written notice, specifying in what respect said acts or proceedings are irregular, defective, erroneous, or faulty." If, in fact, the council here acts without authority of law, its acts and the proceedings thereunder are certainly irregular and erroneous, and, by following the procedure authorized by section 5237 above, plaintiff properly raised the question of the jurisdiction of the council to act. The rule of estoppel applied in the *Power Case,* wherein the council acted within jurisdiction, has no application to a case wherein such a body presumes to act without authority of law. (*Manning* v. *Den,* 90 Cal. 610, 27 Pac. 435; *Southwick* v. *Santa Barbara,* 158 Cal. 14, 109 Pac. 610.)

In this connection defendants invoke the rule that the decision of the council as to benefits is conclusive upon the courts, regardless of whether or not the property in question would, in fact, be benefited by the improvement. This is but a corollary to the rule of estoppel treated above. We recognize the applicability of the rule in a proper case, but this matter

of providing for the payment of the expense of improvements by assessment according to benefits follows, and is dependent upon, the power or authority to make the improvement; when this authority exists, then provision for payment in this manner is authorized, and, the question of benefits being one of fact, the determination by the council is conclusive. (*City of Globe* v. *Willis,* 16 Ariz. 378, 146 Pac. 544; *Power* v. *City of Helena,* above.) However, the question of benefits as the basis of the assessment is not here involved; plaintiff's position here would be no different if, in fact, his property abutted upon the proposed sewer, instead of being some five blocks distant therefrom; the question here raised is as to the jurisdiction of the council, under the authority conferred by the statute, to create the district as a special improvement district and pay for its construction by assessments upon property, abutting or nonabutting. If the action of the council is without jurisdiction, or in violation of the statutory provisions on the subject, its action is irregular and erroneous, and is subject to attack as in section 5237, above, provided. Plaintiff, having availed himself, within time, of the right to protest the proceedings, is now in a position to have the question, thus presented, determined.

2. Whether the expense of making such an improvement ▇ shall be paid out of the general treasury, or be assessed upon abutting property, or other property specially benefited, and if, in the latter mode, whether the assessment shall be upon all property found to be benefited or alone upon the abutters, is a question of legislative expediency. (Dillon on Municipal Corporations, 4th ed., sec. 752.)

The authority of a city to construct sewer systems is found in section 5239, Revised Codes 1921, a part of Chapter 56 above enacted in 1913, which reads: "A sewer system may be established in a city, which system may be divided into public, district, and private sewers. Public sewers may be established and constructed along the principal course of drainage at such times, to such an extent, of such dimensions

and material, and under such regulations as may be prescribed by the council; and there may be constructed such branches and extensions of sewers already constructed, or to be constructed, as may be considered expedient. To defray the cost of such public sewers, the council may appropriate moneys therefor from the general or sewer fund, or by availing itself of moneys derived from a bond issue authorized by the Constitution and laws of the state. It is further provided that, when a public or main sewer also serves as a district sewer, the city council may assess the property bordering or abutting upon such public sewer, either at the time of its construction or at any future time, for an amount equal to the estimated cost of such district sewer capable of accommodating such property.'' By this enactment ''public sewers'' and ''district sewers'' are recognized and authority is granted for their construction.

''Public sewers'' are defined in this state to be those which serve the public and connect with and receive discharges from district sewers, and can be constructed only as a public project, paid for by moneys from the general sewer fund, or moneys derived from a bond issue, and the municipal legislative body cannot authorize what is in fact a public sewer, and, by merely denominating it a district sewer, tax the cost of construction to the lots in the district named. (*Rush* v. *Grandy*, 66 Mont. 222, 213 Pac. 242.)

In a sewer system, composed of both public and district sewers, the main artery—the trunk line—is the public sewer; it serves the property in its drainage area only indirectly as it serves the public generally and carries off the discharges from district sewers, which serve the property directly. On the other hand, district sewers must, to be such, accomplish the purpose of a sewer system without other or outside aid, except such as it receives by the carrying off of its discharge by the main trunk line. Such a sewer may be constructed under the provisions of section 5227, Revised Codes 1921, by creating a special improvement district and assessing the cost of the improvement against the property within

the district created. The theory upon which a municipality may levy an assessment for such an improvement is that the property charged receives a corresponding physical, material and substantial benefit from the improvement. (*Power* v. *City of Helena*, above.)

The statute above further authorizes the city council to assess bordering or abutting property with a portion of the cost of constructing a public sewer, when such a sewer also serves as a district sewer; but this is done, not by the creation of a district for the construction of the public sewer, but incidentally "either at the time of its construction or at any future time."

Conceding, as they must, that the main trunk line to be constructed under the contract in question would not serve plaintiff's property without the creation of districts for the construction of lateral sewers, counsel for defendants contend that this sewer is not a "public sewer," because it does not purport to serve the entire city, and that the opinion in *Rush* v. *Grandy*, above, is not controlling, for the reason that the sewer there contemplated did serve the entire city.

The *Rush Case* was decided under our present law, and there is some justification for the contention that thereunder a public sewer should be held to be one which does drain an entire city, as the change in the law, made in 1913, authorizes the construction of public sewers along "*the* principal *course* of drainage," whereas the law, as it existed prior to that time, authorized such construction along "the principal *courses* of drainage," which would seem to indicate a legislative intent that now a public sewer should only be constructed along the single principal course of drainage within the city; but in the same section (5239) we find the provision that "there may be constructed such branches and extensions of sewers already constructed, or to be constructed, as may be considered expedient," which provision is a part of the paragraph on "Public Sewers," so that we find the statute authorizing the

construction of a main line public sewer and branch or extension public sewers.

In the *Rush Case* no stress is laid upon the fact, if it is a fact, that the construction there condemned as a special improvement served the entire municipality, but merely upon the showing that the sewer was constructed as a main line which would "serve as the outlet of district sewers if they should be constructed in the future"—a condition analogous to the showing made in the case at bar; the sewer was a "public sewer," which could not be paid for by assessments as a special improvement.

The definition of a public sewer, so worded as to meet the condition before the court, was taken from *Southworth* v. *City of Glasgow*, 232 Mo. 108, Ann. Cas. 1912B, 1267, 132 S. W. 1168. Turning to the report of this case, we find that the writer of the opinion in the *Rush Case* could not have considered the question, as to area served, at all important, as the statement made by the supreme court of Missouri, from which the writer took his definition, is: "A 'public sewer' is not necessarily one to accommodate a whole city, but is one which serves the public, and not an individual, and which connects with and receives the discharges from district sewers and the surface water which falls on the street near or under which they run"—citing *State ex rel. City of Joplin* v. *Wilder*, 217 Mo. 271, 116 S. W. 1087. In this latter case the situation here presented is directly dealt with. Burgess, J., wrote an opinion in which he declared that the projects, proposed as the basis of a bond issue, called for the construction of two sewers, neither of which served the entire city, and were therefore not public sewers to be constructed at the expense of the entire city, and then held that the city could not proceed with the election on the bond issue for the reason that it had submitted two independent propositions in such manner that the people were compelled either to vote for or against both. His opinion was concurred in by two justices. Woodson, J., wrote a "separate opinion," concurring in the result reached,

but vigorously dissenting from the declaration that the sewers in question were not public sewers. Using the illustration of cities in his state divided by a river or stream, the writer condemned the idea that, in order to be a public sewer, a trunk line must drain an entire city, Justice Woodson said: "In my judgment that is neither the meaning nor the common sense of the law; * * * the city, under the law, has the right to construct as many public sewers as the necessities of the city may demand, each local in the sense of area drained, but public in character, not serving individuals or private property, but the public. * * * If a sewer must drain the entire city before it can become a public sewer, then there is no possible room for another, and if the physical formation of the earth is such that one sewer cannot be so constructed as to drain the entire city, then that city, and all similarly situated, have no power whatever to construct a public sewer." It is then stated that it would be against all reason and common sense to so construe the law. This opinion was concurred in by a majority of the court, and was therefore followed in Missouri. A later declaration of that court, found in *Schwabe v. Moore,* 187 Mo. App. 74, 172 S. W. 1157, seems to describe the sewer in the case at bar; i. e., that a sewer built according to public sewer specification, which fits into the general sewer system of the city, and serves the public and will drain a large area of the city *when other sewers are established,* is a public and not a district sewer.

The decisions of the Missouri court are specially applicable here, as the distinction between public and district sewers and the manner of paying therefor are the same under its laws as under ours. Decisions may be found holding that such a sewer as is here contemplated may be constructed as a special improvement and paid for by assessment of property to be benefited thereby, but in those jurisdictions such action is authorized by special statute or city charter, and such decisions are of little value in determining the question before us. Thus, under the charter of the city of Portland, Oregon, the city

is authorized to create sewer districts and assess the cost of construction, according to benefits, without regard to the distinction between public sewers and district sewers; under this authority it is held that the determination of the city council is conclusive in a collateral attack, unless the action of the council shows fraud upon its face, and assessment against non-abuttable property, to which no laterals have been laid, is upheld (*Beckett* v. *City of Portland,* 53 Or. 169, 99 Pac. 659; see, also, *Giles* v. *City of Rossburg,* 96 Or. 453, 189 Pac. 401; *City of St. Paul* v. *Sanborn* (Minn. 1928), 222 N. W. 522), while the opposite conclusion is reached in *State* (*Kellogg, Pros.*) v. *Elizabeth,* 40 N. J. L. 274, as in the Missouri decisions cited above, under statutes similar to ours, recognizing the distinction between public and district sewers (3 Comp. St. N. J. 1910, p. 3615, "Municipal Corporations," secs. 569, 570). In the New Jersey case the right, granted by our statute, to assess the just proportion of the cost of the trunk line, as well as laterals, to property benefited thereby, is recognized, when the trunk line is constructed according to law.

In Ohio the general laws on the subject are, in effect, the same as ours, and in *Wewell* v. *City of Cincinnati,* 45 Ohio St. 407, 15 N. E. 196, it is held that a public sewer may only be constructed at public expense; but nevertheless, if the city so provides for a unit of its sewer system that all of the property within the district will be connected up and served by the system to be constructed under the one proceeding, the entire cost of the system may be assessed to the property thus served. Thus the distinction between what might have been done in Missoula, under our law, and what was attempted to be done by deferring the construction of the laterals and connecting up the property with the main, is illustrated, while the difference in procedure under statutes such as we have and those disregarding the fundamental difference between public and district sewers is made clear in *City of Toledo* v. *Ford,* 20 Ohio Cir. Ct. Rep. 290, wherein the court pointed out that, under the general laws of the state, "trunk sewers"

can only be constructed by the use of public funds, and then held that in the city of Toledo they may be constructed by assessment, "although the same is not intended to be used for local drainage, and in fact cannot be used for that purpose," because "Toledo seems, in municipal legislation, to be always blessed with something peculiar to herself," and in this respect had secured the enactment of a law permitting such action in cities of a certain class; Toledo being the only city of that class in the state.

"The difference between a public and district sewer is not a mere difference in name, but is a physical fact, so that the municipal legislative body cannot authorize what is in fact a public sewer, and by merely denominating it a district sewer tax the cost of construction on the lots in the district named." (4 McQuillin on Municipal Corporations, 2d ed., 300.)

In all jurisdictions wherein this fundamental difference is recognized by legislation providing the manner of constructing public sewers and district sewers, this rule is adhered to by the courts.

As above made clear, the opinion in *Rush* v. *Grandy* declares that, under our present law, such a sewer as we have under consideration cannot be constructed by the creation of a special improvement district and paid for by assessments on the property within the district attempted to be created, and we are bound by that decision under the rule of *stare decisis*, but, further than this, we find no applicable authority to the contrary.

When a sewer system contemplated is, under the law, one ██ which can be constructed by special assessments, property which, though distant from the lines of sewer, may be benefited by the sewer, may be assessed (*O'Connell* v. *First Parish*, 204 Mass. 118, 90 N. E. 580; *Beals* v. *Inhabitants of Brookline*, 174 Mass. 1, 54 N. E. 339; *Springfield* v. *Gay*, 12 Allen (Mass.), 612); and it is permissible to include benefits which may reasonably be anticipated to result in the future from the improvement for which the assessment is made, but

property cannot be assessed unless benefited by present use or by an assured future use of such a nature that the owner of the property can enforce his right and thereby secure the benefit which must spring from the proceeding in which the assessment is made.

An assessment cannot be predicated upon future action of the public authorities or future legislation, and hence, if property cannot be benefited by a proposed improvement, unless subsequent work is done for which no provision is made, the property cannot be specially assessed. The reason for this rule is plain; no matter how good the intention of the authorities may be to extend the system proposed by the creation of additional districts, at the time, or at a future time, their action must depend upon the sanction of the people interested, and this sanction may be withheld. (44 C. J. 586, 587; *Lawrenceville* v. *Hennessy*, 244 Ill. 464, 91 N. E. 670; *City of Chicago* v. *Sullivan Machinery Co.*, 269 Ill. 58, 109 N. E. 696; *Title Guarantee Co.* v. *Chicago*, 162 Ill. 505, 44 N. E. 832; *State (Kellogg, Pros.)* v. *Elizabeth*, above; *In re Commrs. to Drain the Great Meadows on Pequest River*, 39 N. J. L (10 Vroom.) 433; *State ex rel. Joplin* v. *Wilder*, above; *Gilmore* v. *Hentig*, 33 Kan. 156, 5 Pac. 781; *Hanscom* v. *City of Omaha*, 11 Neb. 37, 7 N. W. 739; *In re Park Avenue Sewers*, 169 Pa. 433, 32 Atl. 574.)

Herein it is conceded that property of plaintiff and others, not abutting on the main line sewers proposed to be constructed will receive direct benefit, or any benefit at all, only by the future creation of districts for the construction of, and the construction of, district sewers leading from streets on which such property is situated to and connecting up with the mains

Under our statute such a project as is outlined in the resolution of the council, and in the testimony, cannot be constructed as a special improvement district project, but must be constructed as a public sewer, and paid for out of the general or sewer fund of the city, or by moneys derived from a bond issue. If constructed as provided by law, the city may

assess the property bordering or abutting upon such public sewer, either at the time of the construction or at a future time, for an amount equal to the estimated cost of such a district sewer as would serve such property in the manner that it is, in fact, served by such public sewer; but such assessment would not be levied as upon property within a created district, and could not extend to property not served by the public sewer. The plans and specifications for the sewer system, as contemplated by the construction of these main trunk lines and submains, and the laterals extended upon the map, but not to be constructed until such time as special districts may be created in the future, would seem, as a whole, to constitute a valid district sewer system, with platted lots, abutting thereon, from its beginning until it empties into the Missoula River, and it would seem that, if the construction of the entire system had been provided for in a single resolution and proceeding, the entire system might be constructed as a district sewer system, but it cannot be constructed piecemeal, as contemplated, under the special improvement district law.

Having reached the conclusion which we are forced to announce herein, in spite of reluctance to do so, by reason of the plain necessity for a sewer system in the territory described, no good purpose would be served by passing upon the other irregularities alleged.

The judgment is reversed, and the cause remanded to the district court of Missoula county, with direction to grant the prayer of plaintiff's complaint.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.