THE CITY OF CHICAGO, Appellant, *vs.* THE SULLIVAN
MACHINERY COMPANY *et al.* Appellees.

*Opinion filed June 24, 1915—Rehearing denied October 7, 1915.*

1. SPECIAL ASSESSMENTS—*what need not be included in district for construction of a sewer.* Incident to the power to construct a sewer system is the power to define the district which shall be permitted to drain into the main sewer, but no property need be included in the district where it is a physical impossibility to connect it with the sewer system proposed, notwithstanding the fact that such property will incidentally be benefited because the making of a new district will afford this property an adequate and sufficient outlet through its own sewer, which before the improvement suffered congestion.

2. SAME—*manner in which city has acquired easement not involved.* In a proceeding for the confirmation of a special assessment for a sewer, the question whether or not the city has acquired its easement in the manner provided by statute is not involved, where the city has acquired title sufficient to enable it to construct the improvement and the legality of the acquisition has not been questioned by any action brought against the city.

3. SAME—*effect where property is not described in the resolution nor condemnation provided for in the ordinance.* A city is entitled to a judgment of confirmation of a sewer assessment although certain property to be taken is not described in the resolution, as provided in section 7 of the Local Improvement act, nor its condemnation provided for by ordinance, where proceedings to condemn the property for a street have already been instituted in accordance with a prior local improvement ordinance and are prosecuted to judgment in apt time.

4. SAME—*meaning of section 53 of the Local Improvement act.* Section 53 of the Local Improvement act, which provides that no special assessment or special tax shall be levied for any local improvement until the land necessary therefor shall be acquired and in possession of the municipality, except in cases where the proceedings to acquire such land shall have been begun and proceeded to judgment, does not require that the title be acquired before the assessment roll is filed, but is complied with where the necessary title has been acquired before the confirmation of the assessment roll, as the assessment is not finally levied until it is confirmed.

5. SAME—*estimate for a sewer need not specify cost of restoring pavement.* The restoration of such pavement as must be de-

stroyed in constructing a sewer is a mere incident to the improvement and the cost of such restoration may be included in the estimate of the cost of the improvement, but it is not necessary that the estimate particularly specify such cost. (*Northwestern University* v. *Village of Wilmette,* 230 Ill. 80, followed.)

6. SAME—*how city may acquire easement for a public street.* Where a railroad company has duly accepted the provisions of a track elevation ordinance requiring the construction of a subway at a certain street, such action effectively conveys an easement to the city for a public street in the property within the railroad right of way and the line of the street, and a subsequent ordinance authorizing the construction of a sewer need not provide for the condemnation of such property, as the right to construct a sewer is included in the easement for a street.

7. SAME—*mortgagee need not be named as an owner.* The mortgagor or his assignee is the legal owner of the mortgaged property as against all persons except the mortgagee or his assigns, and in a proceeding under the Local Improvement act to condemn the property it is not necessary to name the mortgagee as owner, where the mortgagor is named as owner and occupant.

8. PARTIES—*distinction between the Eminent Domain act and Local Improvement act as to parties defendant.* Sections 13 to 33 of the Local Improvement act provide a complete code of procedure different from that of the Eminent Domain act for condemnation proceedings in making local improvements, and section 20 thereof provides that all owners and occupants of the property to be taken be named as parties defendant, while all interested otherwise be designated as "all whom it may concern."

APPEAL from the County Court of Cook county; the Hon. J. E. HILLSKOTTER, Judge, presiding.

PHILIP J. MCKENNA, and GEORGE P. FOSTER, (JOHN W. BECKWITH, Corporation Counsel, of counsel,) for appellant.

WILLIAM T. HAPEMAN, WILLIAM J. DONLIN, KNAPP & CAMPBELL, and ROYAL B. CUSHING, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county sustaining one of the legal objections made upon the application of the city of Chicago for the con-

firmation of a special assessment for the construction of a sewer.

A number of years ago when the section of the city in which the proposed sewer district is located was much more sparsely settled than at the present time a sewer district was created, which was known as the Twenty-second street district. This district was somewhat irregular in shape, but it may be described with fair accuracy as extending east and west from Paulina street to Hamlin avenue and north and south from Kinzie street to Twenty-sixth street. The main or trunk sewer serving this district extended east along Twenty-second street from Hamlin avenue to a point between Wood and Paulina streets and thence south to the Chicago river. At its outlet this main sewer is nine feet in diameter. Branch sewers extended from the main or trunk sewer to the north and south, serving the whole of the district. As this territory improved and became more densely populated the main sewer failed to afford an adequate outlet for the sewage and storm waters of the district. By reason of this situation that part of the territory lying between Hamlin avenue and Sacramento boulevard was detached from the district and organized into a separate sewer district, which is known as the Albany avenue district, and the old Twenty-second street sewer was thereafter used to serve as an outlet for that part of the original district lying east of Sacramento boulevard. In time the Twenty-second street sewer became inadequate as an outlet for the district as thus restricted. The ordinance here involved was then passed creating a sewer district of the territory lying between Sacramento boulevard and Oakley avenue, leaving as the territory remaining in the old Twenty-second street district that part of the original district lying between Oakley avenue on the west and Paulina street on the east, Polk street on the north and Twenty-second street on the south. By the ordinance here involved it is proposed to construct

a sewer in Rockwell street, and in Rockwell street produced, from the Chicago river north to Ogden avenue, thence west on Ogden avenue to Washtenaw avenue and thence north to Adams street, which, together with the necessary sub-mains and laterals, will drain all the territory within the new district.

A number of legal objections were filed, all of which were overruled except one. The objection sustained was, that all the property that would be benefited by the construction of the proposed sewer was not included within the district. The basis of this objection is that there is now congestion in that part of the original district which lies east of Oakley avenue by reason of the fact that the Twenty-second street sewer does not furnish an adequate outlet for the original district, and as the construction of the proposed Rockwell street sewer, with its laterals, in the new district will relieve this congestion and afford a sufficient and adequate outlet through the old Twenty-second street sewer for that portion of the district lying east of Oakley avenue, that territory should be included in the new district and should be assessed for benefits accruing to the property included in it, by reason of the abandonment of the Twenty-second street sewer as an outlet for the territory west of Oakley avenue.

It is conclusively shown by this record that the property east of Oakley avenue can never avail itself of the benefits of the Rockwell street sewer by attaching thereto, for the reason that none of the property east of Oakley avenue can be drained into the Rockwell street sewer. The only benefit to the property east of Oakley avenue, if any, is occasioned by the fact that the territory west of it has abandoned the Twenty-second street sewer as an outlet and thus made that sewer more efficient as an outlet for the territory east of Oakley avenue. Although this is the first time this precise question has been presented to us for decision, we have many times been called upon to determine

under what circumstances property is liable for assessment for the construction of a sewer. Incident to the power to construct a system of drains and sewers is the definition of the district which shall be permitted to drain into the main sewer. (*Gray* v. *Town of Cicero,* 177 Ill. 459; *Duane* v. *City of Chicago,* 198 id. 471.) While it is true that property may be benefited which is not immediately reached by a sewer, this is only when the ordinance is of such a character as to make possible a connection between the property and the outlet, with some provision permitting the property owner to use such outlet in the future. We have repeatedly held that no assessment based upon a prospect of a future connection with a sewer is valid unless a drainage district is created which will drain into such sewer and some provision is made which will eventually effect such connection with the property assessed, or the property owner is assured that he will in some way be entitled to the benefit of the sewer. (*Title and Trust Co.* v. *City of Chicago,* 162 Ill. 505; *Gray* v. *Town of Cicero, supra; Mason* v. *City of Chicago,* 178 Ill. 499; *Bickerdike* v. *City of Chicago,* 185 id. 280; *Snydacker* v. *Village of West Hammond,* 225 id. 154; *City of Lawrenceville* v. *Hennessey,* 244 id. 464.) It cannot be contended that the property east of Oakley avenue is benefited by any present use of the sewer or by any assured future use of such a nature that the owners can enforce their rights and thereby secure the benefits, as it is a physical impossibility to drain this territory into the Rockwell street sewer. As has been stated, the benefits which it is claimed will accrue to the territory east of Oakley avenue by reason of the construction of the Rockwell street sewer arise, not because this territory can ever be connected with the proposed sewer, but because, as an incident to the construction of the proposed sewer, the territory lying west of Oakley avenue will abandon the old Twenty-second street sewer as an outlet and thus afford the territory on the east adequate and suf-

ficient outlet for its sewage. Such benefits, if any, would not warrant the inclusion of this territory within the new district. It is improper to include within a sewer district any property which will not have either the present or the future opportunity of connecting with the system of sewers to be constructed to serve the district. The property east of Oakley avenue would be benefited precisely the same if the Twenty-second street sewer had been abandoned by the other portion of the territory for any other reason than the one which now prompts the abandonment.

Appellees insist that a portion of the territory within the new district is in the same situation as the property east of Oakley avenue, and in support of this claim point out that it is proposed to serve a portion of the new district with a sewer at present in Western avenue,—a street running north and south a short distance west of Oakley avenue,—which sewer empties into the Twenty-second street sewer at the junction of said Western avenue and Twenty-second street. While it may be proposed, for the time being, to serve that portion of the territory west of Oakley avenue and in the vicinity of Western avenue with the present lateral sewer, that property is all within the territory which can be drained into the Rockwell street sewer and which it is proposed will ultimately be connected with that sewer. In that respect it is different from the property east of Oakley avenue, which under no circumstances can drain into the Rockwell street sewer. The court erred in sustaining this objection.

Among the legal objections made, and overruled by the court, are the following: (1) That the first resolution of the board of local improvements does not describe the property which is necessary to be taken for the improvement; (2) that the easements in or deeds for the property procured by the city are not sufficient; (3) that the track elevation ordinances offered in evidence by the city do not give the city any right or authority to construct this

sewer under the tracks of the Chicago, Burlington and Quincy Railroad Company; (4) that the city has not complied with section 53 of the Local Improvement act by acquiring its title to the land necessary for the improvement prior to the filing of the assessment roll; and (5) that the ordinance is unreasonable and void for the reason that in a part of Rockwell street, and in other streets where it is proposed to construct a sewer, there is now good pavement in place and there is no item in the estimate or any provision in the ordinance for the restoration of such pavement. Appellees have assigned cross-errors upon the action of the court in overruling these objections.

The first resolution originating this improvement was dated November 1, 1910, and the date of the hearing at which the second resolution was passed was November 15, 1910. The ordinance authorizing the proposed improvement was passed May 22, 1911. Rockwell street does not extend further south than Twenty-sixth street, which is some distance north of the west branch of the south branch of the Chicago river, which is the outlet for the sewer. The fee of the property in Rockwell street produced south to this branch of the river was in the International Harvester Company. On March 14, 1910, a track elevation ordinance was passed by the council of the city of Chicago requiring the Illinois Northern Railway Company and other railway companies therein named to change the plane of certain of their railroad tracks within the city of Chicago. By this ordinance the Illinois Northern Railway Company was required to procure, at its own expense, an easement running through the city from the intersection of West Twenty-sixth street and South Rockwell street to a point on the north bank of the west fork of the south branch of the Chicago river, which latter point should be in the center of South Rockwell street produced in order to enable the city to construct and maintain a closed sewer beneath the surface of the land so traversed. Thereafter.

the Illinois Northern Railway Company duly accepted the provisions of this ordinance by a written instrument under seal, which was filed with the city clerk, and on July 18, 1910, the International Harvester Company, the owner of the fee, in pursuance of the provisions of that ordinance, duly granted and conveyed to the city of Chicago the easement therein mentioned and provided for. It is contended that the acquiring of titles or easements by a city by private negotiation and contract is, in such a case as the one here presented, illegal and void, and that the city must acquire title in the manner provided by the statute. Whether the city had the right to acquire this easement in the manner in which it was acquired is not involved in this proceeding. It had acquired such title as it had, prior to the adoption of the first resolution originating this improvement. The conveyance to the city by the International Harvester Company divested the grantor of such title as it conveyed and vested the same in the city, and the legality of this purchase has not been questioned by any action brought against the city of Chicago. As the ordinance merely provides for the construction of this sewer through property so acquired by the city and to which it has acquired title sufficient to enable it to so construct the improvement, it is not defective or subject to this objection. *Snydacker* v. *Village of West Hammond, supra.*

On January 24, 1898, the council of the city of Chicago passed a track elevation ordinance covering the main line of the Chicago, Burlington and Quincy Railroad Company from the west line of the city limits eastward to Laflin street, and on September 3, 1907, a supplemental ordinance was passed covering the track elevation of portions of the same line, which included the construction of a subway under the tracks of this company where such tracks are intersected by Rockwell street, the construction of the same to be at the expense of the railroad company. The railroad company accepted the provisions of the origi-

nal ordinance on February 21, 1898, and accepted the provisions of the supplemental ordinance on October 12, 1907. It was not necessary to describe the property within the right of way of the Chicago, Burlington and Quincy Railroad Company and in the line of Rockwell street in the first resolution originating the improvement or to provide for its condemnation in the ordinance. The execution by the railroad company of its acceptance of the provisions of the track elevation ordinances by its proper officials and under seal effectively conveyed the easement to the city of Chicago in this property for a public street. This same question was involved in *City of Chicago* v. *Walker,* 251 Ill. 629, in reference to this identical property. In that case the city of Chicago was proceeding, under the Local Improvement act, for the opening of South Rockwell street from West Eighteenth place to West Nineteenth place, which included this property. It was there held that it was not necessary for the ordinance authorizing the improvement to provide, by condemnation or otherwise, for acquiring the right to cross the right of way of the railroad company where it was intersected by the proposed street, as that was rendered unnecessary by the passage of the track elevation ordinances herein referred to, which expressly provide for a subway to be constructed at this point, and the acceptance of those ordinances by the railroad company. It was there held that when the proposed improvement and the track elevation ordinances are considered together, it is clear that provision had been made by the city for the entire improvement and there existed no reason why such improvement could not be made and paid for by special assessment. It will thus be seen that prior to November 1, 1910, the date of the first resolution originating the proposed improvement, the city had acquired a perpetual easement in the lands of the International Harvester Company within the line of Rockwell street produced south to the Chicago river, and that a sub-

way was provided for across the right of way and under the tracks of the Chicago, Burlington and Quincy Railroad Company at Rockwell street. It cannot be successfully contended that the city does not have the right to construct a sewer in a street thus acquired, as that is one of the acknowledged uses to which such an easement can be put.

On November 1, 1910, the date of the first resolution, there were pending in the circuit court of Cook county condemnation proceedings for the opening of Rockwell street from Nineteenth street north to the right of way of the Chicago, Burlington and Quincy Railroad Company, being the proceedings involved in *City of Chicago* v. *Walker, supra.* As the city had not acquired title to that strip on that date, it is contended that the first resolution should have described this property as necessary to be taken for the improvement, in accordance with the provisions of section 7 of the Local Improvement act, which requires the resolution to describe the property proposed to be taken whenever the proposed improvement will require that private property be taken or damaged. Proceedings were already pending for the condemnation of this property to be used as a public street, under the provisions of a prior ordinance creating a local improvement. Under these circumstances it was not necessary to describe this property in the first resolution or provide for its condemnation by the ordinance. Had this procedure been followed the city would have been placed in the anomalous position of prosecuting two separate and distinct proceedings for the condemnation of the same property for the same use. Under the ordinance here involved the city had a right to proceed and to have an order of confirmation of the assessment entered, provided the condemnation proceedings instituted in accordance with the prior local improvement ordinance were prosecuted to a judgment in apt time.

It is in reference to the above tract that the objection was made that the city had not complied with section 53

of the Local Improvement act by acquiring title to the land necessary to the improvement prior to the filing of the assessment roll. Section 53 does not provide that such title must be acquired before the filing of the assessment roll. That section of the Local Improvement act provides that no special assessment or special tax shall be levied for any local improvement until the land necessary therefor shall be acquired and in possession of the municipality, except in cases where proceedings to acquire such land shall have been begun and proceeded to judgment. Appellees assume that the assessment is levied upon the filing of the assessment roll, while appellants, on the other hand, contend that the assessment is not levied until the order of confirmation is entered. The proceeding for the condemnation of this tract had not proceeded to judgment before the filing of the assessment roll. The petition for condemnation was filed September 2, 1910, and final judgment was obtained September 16, 1913. The cases cited by appellees in support of this contention are not in point as they do not determine the question of the time when the assessment is actually levied. The provisions of said section 53 are complied with where the necessary title has been secured by a municipality before the hearing upon the application for the confirmation of the assessment roll, as the assessment is not finally levied until the order confirming the assessment roll has been entered.

It is further objected in this connection that the city has not acquired title to this tract for the reason that prior to the institution of the condemnation proceedings by the city on February 2, 1910, all the property of the Chicago, Burlington and Quincy Railroad Company had been conveyed by trust deed to the New England Trust Company to secure an indebtedness therein mentioned, and the trustee was not made a party defendant in the condemnation proceedings. In support of their contention that this constitutes a fatal omission the appellees cite and rely upon cases

decided under the Eminent Domain act. The decisions under that act are not applicable to the question here presented. The condemnation proceedings here involved were instituted pursuant to the provisions of the Local Improvement act. That act is separate and distinct from the Eminent Domain act and differs from that act in the practice and procedure prescribed. The Local Improvement act entirely regulates condemnation proceedings instituted thereunder without resort to any other act, and sections 13 to 33 thereof provide a complete code of procedure different from that of the Eminent Domain act. (*Rieker* v. *City of Danville,* 204 Ill. 191.) Section 20 of the Local Improvement act provides that every person who shall be named in the commissioners' report as an owner of property to be taken or damaged for the improvement, and every person who shall be named as an occupant of any parcel thereof, shall be made a party defendant in the condemnation proceeding, and that all other persons having or claiming interests in any of said premises shall be described and designated as "all whom it may concern," and by that description shall be made defendants. The Chicago, Burlington and Quincy Railroad Company was made a party defendant as the owner of this tract of land and as the occupant thereof. The New England Trust Company was not made a party defendant by name, but it is not controverted that section 20 of the Local Improvement act was complied with and all persons other than the owner and occupant who had or claimed to have any interest in the property were made parties defendant under the description of "all whom it may concern." The contention of appellees is that the New England Trust Company was the owner of the property, as by the trust deed given it to secure the indebtedness of the railroad company the legal title was conveyed to it. It is now the settled law that the mortgagor or his assignee is the legal owner of the mortgaged property as against all persons except the mortgagee or his assigns.

(*Hall* v. *Lance*, 25 Ill. 250; *Emory* v. *Keighan*, 88 id. 482; *Lightcap* v. *Bradley*, 186 id. 510.) "The mortgagee is the legal owner for only one purpose, while, at the same time, the mortgagor is the owner for every other purpose and against every other person. The title of the mortgagee is anomalous, and exists only between him and the mortgagor and for a limited purpose." (*Lightcap* v. *Bradley*, *supra*.) In the light of these decisions the mortgagee, the New England Trust Company, was not an owner as against the city of Chicago, and under the provisions of the Local Improvement act the city was not required to make it a defendant by name in the condemnation proceeding. It was properly made a defendant under the general description of "all whom it may concern." The condemnation proceeding having been regular and due notice having been given to all those having an interest in the property, the city, upon the entry of final judgment, became vested with a complete title, and the easement thus acquired is good against the mortgagee as well as the mortgagor of the property involved.

Under the objection that there is no item in the estimate or any provision in the ordinance for the restoration of the pavements in Rockwell street and other streets where it is proposed to construct the sewer, it is contended that the ordinance is unreasonable because the destruction and restoration of good and serviceable pavement are involved; that this will involve the repair of such pavement, and that an assessment cannot be made for the purpose of repairing pavements or re-paving streets on which the existing pavements are good. In support of this contention appellees cite and rely upon a line of cases which hold, in effect, that a new pavement cannot be substituted for one which is perfectly good and serviceable, by special assessment proceedings. These decisions were all rendered in cases where municipalities had instituted proceedings for the paving of streets where the existing pavements were in a good and

serviceable condition or where the pavement was provided for in other ordinances under which contracts had been let. In this case it is not sought to levy an assessment for a new pavement. The tearing up of such pavement as must be destroyed is a mere incident to the construction of the sewer and is necessary in order to accomplish the purpose of the ordinance. The ordinance would entirely fail of its purpose if it were not possible to tear up the surface of the ground where it is proposed to construct the sewer. It cannot be regarded as levying an assessment for a new pavement or for repairing pavements to include the cost of restoring the pavements necessarily torn up in excavating for the sewer. In passing upon a similar question in *Northwestern University* v. *Village of Wilmette,* 230 Ill. 80, we said: "We think it clear that the cost of re-paving streets torn up in excavating for the sewers and removing surplus earth placed upon the streets of the village during the construction of the sewers is included in the estimate of the cost of the improvement, as, obviously, the improvement would not be put in in a good and workmanlike manner if the portions of the streets where sewers were laid were left unpaved and the earth excavated and not used for re-filling remained in the streets as an obstruction to travel," and it was there held that the improvement would not be completed until the pavement necessarily torn up had been replaced. It was not necessary that the estimate should specify the cost of re-paving streets, and the court did not err in overruling this objection.

For the error indicated the judgment of the county court is reversed and the cause remanded to that court for such further proceedings as will be consistent with the view herein expressed.        *Reversed and remanded.*