THE STATE EX REL. STATE HIGHWAY COMMISSION v. L. D. THOMPSON, State Auditor.—19 S. W. (2d) 642.

Court en Banc, August 19, 1929.

*Edgar Shook, Carl Trauernicht* and *Benjamin H. Charles* for re-lator.

744

746

*Stratton Shartel,* Attorney-General, and *Smith B. Atwood,* Assistant Attorney-General, for respondent.

RAGLAND, J.—Mandamus. Under and conformably to the authority purported to be conferred by Section 44a of Article IV of the Constitution, as amended at the general election held on the 6th day of November, 1928 (Laws 1929, p. 453), and an Act of the General Assembly approved February 15, 1929 (Laws 1929, p. 346), and pursuant to a resolution of the State Highway Commission duly certified to it, the State Board of Fund Commissioners prepared for issuance "Seven Million Five Hundred Thousand Dollars ($7,500,-000) of the bonds of the State of Missouri, to be known and designated as State of Missouri Road Bonds, Series K, to be dated April 1, 1929, to bear interest at the rate of four and one-fourth per centum per annum payable semi-annually on the 1st day of October and of

April in each year, and to be of the denomination of One Thousand Dollars' each. Both principal and interest of the said bonds shall (to) be payable at the Chase National Bank in the City of New York and State of New York." Thereafter Bond No. 1 of the series so prepared for issuance, the same having been duly signed by the Governor, attested by the Secretary of State, countersigned by the State Treasurer and impressed with the Great Seal of the State, was presented by relator, State Highway Commission, to respondent, State Auditor, for registration in conformity with Section 3 of the Act of the General Assembly above referred to. The respondent refused to register the bond. The grounds for such refusal, as disclosed by his return to the petition herein (the issuance of the alternative writ was waived), were as follows:

"(1) That the act of the 55th General Assembly of Missouri, approved by the Governor on the ―― day of February, 1929, by virtue and authority of which the State Highway Commission and Board of Fund Commissioners purport to act in the issuance of the road bond or bonds authorized by Section 44a of Article IV of the Constitution of Missouri, was not at the times mentioned in relator's petition, and is not now, a law of this State, and by reason of the provisions of Sections 57 and 36, Article IV of the Constitution, and Section 7062, Revised Statutes 1919, cannot become such law until after the 29th day of August, 1929, same being the ninetieth day after the adjournment of said 55th General Assembly.

"(2) That said Section 44a of Article IV of the Constitution of Missouri was and is null and void in that it contains more than one subject in violation of the provisions of Section 2, Article XV of the Constitution of Missouri, as enacted November 2, 1920 (Laws 1921, p. 711).

"(3) That said Section 44a of Article IV of the Constitution of Missouri, as amended and adopted at the general election held November 6, 1928, was and is null and void in that the subject of the said proposed constitutional amendment was not clearly expressed in the official ballot title; that the official ballot title by which said proposed constitutional amendment was submitted to the electorate of the State was in the following words:

"'PROPOSITION 3: Amending Article IV, Section 44a of the Constitution, providing for an additional bond issue of $75,000,000 for construction of State highways.'

"That said official ballot title covered, included and referred to one subject only, namely, an additional bond issue of seventy-five million dollars ($75,000,000) for construction of state highways; whereas, the said proposed amendment covered, included and referred to subjects other than an additional bond issue of seventy-five million dollars ($75,000,000) for construction of state highways,

namely: (1) Not more than three hundred miles of additional state roads; (2) Roads to State Parks; (3) The widening of roads in the vicinity of St. Louis and Kansas City; (4) The distribution of surplus money to each county for supplemental state highways; (5) The restriction on motor vehicle fuel taxes to two cents per gallon for a period of ten years; (6) A restriction of motor vehicle license fees to the present rates for a period of ten years; (7) The completion of the state highway system as provided by existing law; (8) A provision for supplemental state highways; (9) For refunds to special road districts and to counties; (10) and that all motor vehicle fuel taxes and motor vehicle license fees shall be expended exclusively on roads.

"(4) That said Section 44a of Article IV of the Constitution of Missouri, as amended and adopted at the general election held November 6, 1928, was null and void in that the ballot title in and by which said proposed constitutional amendment was submitted to the electorate of the State did not contain and give a true and impartial statement of the purpose of the proposed constitutional amendment as required by Section 4943, Revised Statutes 1919.

"(5) That said Section 44a of Article IV of the Constitution of Missouri, as amended and adopted at the general election held November 6, 1928, was and is null and void, in that certain of the provisions of said Section 44a were and are legislative in character and should not have been submitted as a part of the proposed constitutional amendment, nor as an amendment to the organic law of the State of Missouri; and the respondent further avers that all of the provisions of said Section 44a, other than the provision for the issuance of bonds, were legislative in subject-matter as distinguished from constitutional in subject-matter; that by reason thereof the Legislative Assembly of Missouri is deprived of the right reserved to it to propose any measure upon the same subject, which is in violation of that part of Section 57, Article IV, of the Constitution providing that the initiative and referendum 'shall not be construed to deprive any member of the Legislative Assembly of the right to introduce any measure.'

"(6) For further return to the alternative writ the respondent alleges that the Secretary of State of the State of Missouri did not comply with the provisions of Section 4940, Revised Statutes 1919, requiring said Secretary of State, not less than twenty days before the election at which a proposed constitutional amendment is to be submitted to the people of the State, to certify the same to the clerk of each county court of the State; that instead of certifying Proposition No. 3 to the clerk of each county court, as required in said Section 4940, the Secretary of State did, in compliance with Section 5911, Revised Statutes 1919, certify to the county clerks of the

several counties certified copies of the ballot title and the number of said Proposition No. 3, which was the proposed amendment to said Section 44a of Article IV of the Constitution of Missouri, as submitted to the electorate of the State of Missouri at the said general election held November 6, 1928.

"(7) For further return to the alternative writ the respondent alleges that the person offering such proposed constitutional amendment to the Secretary of State, with the initiative petitions therefor, did propose a form of official ballot title for consideration by the Attorney-General; that with certain changes made by the Attorney-General and agreed to by the person offering the said proposed constitutional amendment, the said ballot title so proposed, in not exceeding twenty-five words, became the official ballot title certified by the Attorney-General to the Secretary of State. But respondent further avers that no copy of the said official ballot title as thus certified was ever served by the Secretary of State upon the person offering said proposed constitutional amendment or filing the initiative petitions therefor, as required by said Section 4943, Revised Statutes 1919."

This proceeding was instituted to compel respondent to register the bond, notwithstanding the grounds urged by him as justifying his refusal to do so.

I. Section 44a, adopted in 1920, was an amendment of Section 44 of Article IV of the Constitution. Section 44 denies the General Assembly power to contract any debt or liability on behalf of the State, except in certain cases which are there enumerated. Section 44a created an additional exception. At the general election held in 1928, Section 44a was itself amended, and that is the amendment in question in this case. It will be hereinafter referred to as the Amendment.

The Amendment is first challenged on the ground that it contains more than one subject. Section 2 of Article XV of the Constitution provides, among other things, that "no proposed amendment (to the Constitution) shall contain . . . more than one subject and matters properly connected therewith." [Laws 1921, p. 711.] The Amendment is quite lengthy and for that reason an extended analysis of its provisions will not be attempted. A careful reading of it, however, discloses that it has but one principal objective—one general subject: the authorization of an additional bond issue of $75,000,000 for the construction of state highways. It is true that it covers many things which are ordinarily regarded as matters of legislative detail. It specifies with some particularity the kind, character, locations and apportionment of the state highways for which the authorization is given, and invests the State Highway Commission with large dis-

cretionary powers in connection therewith; it provides the maximum period for the authorized bonds to run before maturity and the maximum rate of interest which they shall bear; it designates who shall determine, within a maximum named, the amount of bonds to be issued, from time to time, and by whom they shall be issued; it names the body under whose directions, and the specific purposes for which, the proceeds of the bonds shall be expended; and it declares and defines with particularity the sources from which the revenue shall be obtained to pay the interest and create a sinking fund for the retirement of the bonds, and in the same connection provides for the disposition annually of the excess of such revenue, if any, over and above the bond requirements. But it is clear that these provisions are all "properly connected" with the subject of the Amendment: they are the conditions and limitations imposed in connection with the grant of power to create an additional indebtedness of $75,000,-000 for state highway construction.

What has just been said is applicable to all the provisions of the Amendment, except possibly those contained in the following paragraph:

"After the principal and interest of all of said bonds shall have been paid, all state motor vehicle registration fees, license fees or taxes, authorized by law, on motor vehicles (except the property tax on motor vehicles and state license fees or taxes on motor vehicle common carriers) and also all state taxes on the sale or use of motor vehicle fuels, authorized by law, less the expense of the collection of such registration fees and license taxes on motor vehicles and taxes on the sale or use of motor vehicle fuels and less also the cost of maintaining the state highway department and the state highway commission and the cost of administering and enforcing any state motor vehicle law or traffic regulation, shall be and stand appropriated without legislative action to the state road fund, to be administered and expended under the direction and supervision of the state highway commission for the purposes and in the manner hereinbefore set forth."

Whether the provisions of this paragraph are "matters properly connected" with the subject of the Amendment need not be determined. It is sufficient to say that the paragraph is severable, and that if eliminated, the remainder of the Amendment would still be complete in itself and sufficient to accomplish the purpose for which it was adopted. Under familiar principles the excission of the questionable paragraph would not affect the validity of the remaining provisions of the Amendment.

II. The validity of the Amendment is next attacked on the ground that it is legislative in character. This contention is largely disposed of by what has been said in the preceding paragraphs. At the time of the adoption of the Constitution of 1875, and ever since, the people of this State have manifested great unwillingness for the Legislature to exercise unrestrainedly the power of creating indebtedness on behalf of the State: the power has been carefully limited and hedged about. The provisions complained of are in line with such policy, being merely limitations on the specific power released: they relate to the organic law. In any event the question of how far a constitutional amendment shall descend into the particulars of government is one of policy only. [1 Cooley's Const. Limitations (8 Ed.) p. 91.] With respect to matters of details, as affecting its validity, it is only necessary that such amendment conform to the requirement of said Section 2, Article XV of the Constitution, namely: "No proposed amendment shall contain more than one amended and revised article of this Constitution, or one new article which shall not contain more than one subject and matters properly connected therewith." And this we hold the Amendment does.

III. The further questions raised as to the validity of the Amendment all relate to its submission at the 1928 election. They are as follows: (1) The subject of the amendment was not clearly expressed in the official ballot title; (2) the ballot title did not give a true and impartial statement of the purpose of the amendment; (3) the Secretary of State did not certify the proposed amendment to the county clerks as required by Section 4940, Revised Statutes 1919; and (4) no copy of the official ballot title as certified by the Attorney-General was ever served upon the person offering the amendment as required by Section 4943, Revised Statutes 1919.

(1) and (2). Said Section 2 of Article XV provides that "the amendments proposed . . . shall be submitted to the electors of the State for their approval or rejection, by official ballot title as may be provided by law." In said Section 4943, this provision is found: ". . . whenever any constitutional amendments shall be filed with the secretary of state, proposed by the initiative petition, he shall within five days thereafter transmit to the attorney-general of the state a copy thereof, and within ten days thereafter the attorney-general shall provide and return to the secretary of state an official ballot title for such proposed constitutional amendments. The official ballot title may be distinct from the legislative title of such proposed constitutional amendment and shall express in not exceeding twenty-five words the purpose of such proposed constitutional amendment. In making such official ballot title the attorney-general

shall, to the best of his ability, give a true and impartial statement of the purposes of the proposed constitutional amendment, and in such language that such official ballot title shall not be intentionally an argument likely to create prejudice either for or against such proposed constitutional amendment.''

It will be noted that the purpose of the proposed amendment must be expressed in not exceeding twenty-five words. The official ballot title in question was as follows:

''PROPOSITION No. 3: Amending Article IV, Section 44a of the Constitution providing for an additional bond issue of $75,000,000 for construction of state highways.''

It is apparent that respondent's contentions (1) and (2) are so devoid of substance that they require no further consideration; they are disallowed.

(3) The question under this head requires the consideration of four related sections of the statutes (R. S. 1919): Sections 4940, 4819 (as amended, Laws 1927, p. 184), 4941 and 4942. The pertinent portions of each are as follows:

Sec. 4940. ''Whenever a proposed constitutional amendment or other question is to be submitted to the people of the state for popular vote, the secretary of state shall duly, and not less than twenty days before the election, certify the same to the clerk of each county court of the state, and the clerk of each county court shall include the same in the publication provided in section 4819.''

Sec. 4819. ''At least seven days before an election to fill any public office, the clerk of the county court of each county shall cause to be published in two newspapers . . . the nominations to office certified to him by the secretary of state, and also those filed in his office. He shall make . . . two such publications in each of such newspapers before the election . . .''

Sec. 4941. ''All amendments proposed to the constitution . . . shall be published . . . in some newspaper . . . in each county in the state for four consecutive weeks next preceding the general election then next ensuing . . .''

Sec. 4942. ''The secretary of state shall designate in what newspaper in each county said proposed amendments shall be published, and the claim due the publisher of such newspaper for such publication and the costs of publishing the copies of the amendment hereinbefore provided for shall be certified by the secretary of state to the state auditor, who shall draw his warrant on the state treasurer therefor, payable out of any money in the treasury not otherwise appropriated.''

We take these sections as they are, disregarding their historical settings: they are plainly *in pari materia* and must therefore be read and construed together. It is manifest that it is not the intention of

the Legislature that proposed constitutional amendments shall be published in every county in the State by both the Secretary of State and the county clerks: that during the last two weeks preceding the election at which they are to be submitted two such publications shall run concurrently in every county, one by the Secretary of State and one by the county clerk. The publication to be made by the county clerks under Section 4819 is neither more nor less than that of a copy of the official ballot that will be used at the election. [Sec. 4820, amended Laws 1927, p. 185.] For every purpose of such a publication the official ballot title of a proposed constitutional amendment is all that is required. The words, "the official ballot title of," should be read into Section 4940, following the word "certify," in order to give expression to the plain legislative intention. As so construed the section was fully complied with in respect to the amendment in question.

(4) Said Section 4943 provides that "any citizen who is dissatisfied with the official ballot title provided by the attorney-general for any proposed constitutional amendment may appeal from his decision to the circuit court." As a part of the procedure to be followed in taking such an appeal there is a requirement that a copy of the official ballot title be served "by the secretary of state or the clerk of the court" upon the person offering the proposed amendment. No appeal was taken from the decision of the Attorney-General relative to the official ballot title in question: there was never any occasion therefore for making the statutory service just mentioned.

IV. The final contention of respondent is that the Act of the General Assembly approved February 15, 1929, is not yet in force, and will not go into effect until ninety days after the adjournment of the Legislature—August 27, 1929. The act contains an emergency clause, as follows:

"The necessity for the early completion of the state highway system provided by law, the reimbursement of counties and other subdivision of the State of moneys expended by them on permanent parts of the state highway system, the relief from congestion of traffic in the areas adjacent to the cities of St. Louis and Kansas City and the beginning of a system of supplementary state highways in each and every county of the state create emergencies within the contemplation of section 36, article IV of the Constitution of the State of Missouri, wherefore, this act shall be in full force and effect from and after the date of its passage and approval."

The question involved is whether the act is subject to referendum under Section 57 of Article IV of the Constitution. If it is, it will

not go into effect until August 27th; if it is not, it is, and since February 15, 1929, has been, in full force.

Under the constitutional provisions just referred to all laws are referable, except "laws necessary for the immediate preservation of the public peace, health or safety and laws making appropriations for the current expenses of the state government, for the maintenance of the state institutions and for the support of public schools." The law in question is not one "making appropriations for the current expenses of the state government" or "for the maintenance of the state institutions and for the support of public schools:" and the Legislature did not declare, nor set forth any finding of facts from which it would appear, that it is "necessary for the immediate preservation of the public peace, health and safety." The act, whether considered as a whole or with reference to a single one of its provisions, cannot be regarded as an emergent police measure. The early completion of the state highway system, the reimbursement of counties for money expended on the state highway system, the relief from congestion of traffic in areas adjacent to St. Louis and Kansas City and a beginning of supplementary state highways in counties, are all desirable, and when accomplished will no doubt greatly contribute to the public welfare, and *indirectly* promote the public peace, health and safety. But it cannot be affirmed that any of these things are necessary for the *immediate* preservation of the public peace, health or safety. [State ex rel. v. Sullivan, 283 Mo. 546, 224 S. W. 327; State ex rel. v. Becker, 289 Mo. 660, 233 S. W. 641; State ex rel. v. Linville, 300 S. W. 1066.]

The fact that the act in question was passed pursuant to a constitutional mandate does not exempt it from the referendum. [Fahey v. Hackmann, 291 Mo. 351, 237 S. W. 752.]

The real ground upon which relator asks this court to uphold the emergency clause of the act is disclosed by the following excerpt taken from its printed argument:

"The court will take cognizance of the fact that the State Highway Department is one of the largest, if not the largest, department operating under the State Government at this time. The work of the department probably has a more direct contact with every section of this State than any other department of government. The importance of its work in the construction of highways and bridges throughout the State, and the magnitude of its responsibilities, will be recognized at once. Its program involves the expenditure of millions of dollars and the employment of thousands of skilled and unskilled laborers, in addition to its extensive staff of engineers and other employees. The necessity for keeping the department supplied with funds with which to carry on its work, readily suggests itself. Any cessation, even though it be temporary, might disrupt a

thoroughly organized, trained and efficient organization. The lack of funds would of necessity compel the disintegration of the Highway ·Department's organization, and, as well, would prevent the making of further contracts for the doing of other and additional work until such time as funds therefor might become available. These arguments were all made and considered in the campaign which re- sulted in the constitutional amendment known as Proposition No. 3. It was for the very purpose of preventing the occurrence of any lapse in activities of the Highway Department that the people of Missouri authorized this amendment to the Constitution.''

It is said that, unless further contracts can be let and work com- menced under them before the approach of the winter season, re- lator's road construction program will be delayed some months— possibly a year.

If the matters just suggested could be properly considered as rea- sons for holding the act now in effect, they are without persuasive force. Although the act was approved February 15, this case, filed for the purpose of having this court determine whether ''all of the conditions of the law have been complied with'' with respect to the issuance of the bonds, was not finally submitted until July 25th. It is probable that before the opinion goes down the act will have gone into effect under the ninety day clause of the Constitution. A ruling that the emergency clause is void, and that the act will not take effect until August 27th, would not delay road construction for a day: it will only be necessary for the Highway Commission and the Board of Fund Commissioners, respectively, to re-adopt their resolutions and again present the bonds to the State Auditor for registration.

To recapitulate: Section 44a of Article IV of the Constitution, as amended at the general election held in November, 1928, as to both its content and matters relating to its adoption, is, and since the 6th day of December, 1928, has been, a valid and subsisting constitution- al amendment. The Act of the General Assembly approved Feb- ruary 15, 1929, authorizing the issuance of $75,000,000 in bonds for state highway construction, will not take effect or go into force until ninety days after the adjournment of the session of the Legislature at which it was enacted.

It follows that a peremptory writ of mandamus must be denied. It is so ordered. All concur, except *Walker* and *Frank, JJ.,* absent.