STATE OF MISSOURI at the Relation of the CITY OF ST. LOUIS, a Municipal Corporation, and CHARLES M. HAY, City Counselor of the City of St. Louis, Relators, v. ROBERT W. HALL ET AL., Judges Constituting the Circuit Court of the City of St. Louis.—75 S. W. (2d) 578.

Court en Banc, October 18, 1934.

*Charles M. Hay, Oliver Senti, G. Wm. Senn* and *Seward McKittrick* for relators.

*Hensley & Hensley* and *John M. Goodwin* for respondents.

GANTT, J.—This came to me on reassignment. It is an original proceeding in mandamus. Relators seek to compel the judges of the Circuit Court of the City of St. Louis, in general term, to appoint a permanent commission composed of three commissioners and three alternates for the assessment of damages and benefits in all condemnation proceedings.

Article 21 of the charter of said city provided the procedure for the acquisition of private property for public use. It contained sixteen sections. In Section 3 the court or judge was directed to appoint three commissioners in each proceeding in condemnation. Under ordinance an amendment of said article was proposed to the voters of the city at the election on April 4, 1933. The proposal provided changes in Sections Nos. 1, 2, 3, 4, 5, 7, 8, 9 and 10. It also added new sections to said article designated Sections 1-a, 17, 18, 19 and 20. The amendment was ratified by the voters at said election. Among other things, it directed in Section 3, as amended, that said judges appoint a permanent commission to fix the damages and benefits in all condemnation proceedings, and said section, as amended, fixed the term and salary of the commissioners and alternates.

Respondent judges challenge the validity of the amendment. They contend that two or more separate and distinct propositions were submitted to the voters as one proposition, and for that reason the amendment is void.

There is no constitutional or charter provision prohibiting the submission of two or more separate propositions as one amend-

ment to the charter of the city. However, if the amendment under consideration submitted separate propositions as one amendment, it was a fraud upon the voters. The rule is stated by a standard text as follows:

"Two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters might be thereby induced to vote for both propositions who would not have done so if the questions had been submitted singly." [21 Am. & Eng. Ency. Law (2 Ed.) 47.]

The parties agree to this statement of the rule. But relators contend that the subject of the amendment relates solely procedure for the acquisition of private property for public use; that the sections of the article as amended are naturally related and dependent on one another; that said amended code is only workable as a unit, and that the amended and new sections of the article were properly submitted to the voters under one amendment. In other words, they contend that the amendment as submitted had only one subject. On this question a leading case states the rule as follows:

"In order to constitute more than one amendment, the proposition submitted must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other." [State ex rel. Hudd v. Timme, 54 Wis. 318, 11 N. W. 785.]

This statement is quoted with approval in Gabbart v. C., R. I. & P. Railroad, 171 Mo. 84, l. c. 99, 70 S. W. 891. And in Hart v. Nevada School Dist., 299 Mo. 36, l. c. 40, 252 S. W. 441, we said:

"If it can be said that the proposed improvements are not naturally related or connected, then it is clear that separate submissions are required; if on the other hand the several parts of the project are plainly so related that, united, they form in fact one rounded whole, it is equally clear that they may be grouped together and submitted as one proposition."

The rule is also stated as follows:

"If, in the light of common sense, the propositions have to do with different subjects, if they are so essentially unrelated that their association is artificial, they are not one; but if they may be logically viewed as parts or aspects of a single plan, then the constitutional requirement is met in their submission as one amendment." [State ex rel. Hay v. Alderson, 49 Mont. 387, l. c. 404.]

Other cases to the same effect follow: Meyering v. Miller, 330 Mo. 885, l. c. 893, 51 S. W. (2d) 65; State ex rel. v. Thompson, 323 Mo. 742, 19 S. W. (2d) 642, l. c. 645; Gottstein v. Lister, 153 Pac. 595; People v. Sours, 31 Colo. 369, l. c. 400, 74 Pac. 167; State ex rel. Printing Co. v. Riplinger, 30 Wash. 281, 70 Pac. 748; State ex rel. Corry v. Cooney, 70 Mont. 355; Bethea v. Dillon, 91 S. C. 413, 74 S. E. 983; State ex rel. Adams v. Herried, 10 S. D. 109, 72 N. W.

93; State ex rel. Teague v. Bd. of Commrs., 34 Mont. 426, 87. Pac. 450; State ex rel. Fargo v. Wetz, 40 N. D. 299, 1. c. 337; Chicago v. Reeves, 220 Ill. 274.

The proposed changes in the article are correctly summarized by relators as follows:

"1. The change adding the restriction of use of property as one of the purposes for which condemnation can be exercised, contained in sections 1, 4, 5 and 10.

"2. The combination of appropriation proceedings and change of grade proceedings contained in section 1.

"3. The change requiring that the consorts of all married defendants be made defendants, contained in section 1.

"4. The provision for a delay in entering judgment if the total damages exceed the sum set forth in the condemning ordinance, contained at the end of section 1.

"5. The inclusion in section 2 that service by publication is valid against any owner who 'cannot be found within the state.'

"6. The provision in sections 3, 7 and 9 for the payment of a salary of $5,000 per year to each commissioner, to be paid by the city; and the provision in said sections for paying to each alternate the same salary as a commissioner during the time he is actively engaged in work, to be paid by the city. (Old Sec. 9 fixed the compensation of a commissioner at $5.00 per day, to be paid by the city.)

"7. The provision that commissioners shall report within ninety days, except by leave of court, contained in section 3, and referred to in section 5.

"8. The provision for publication of the notice of the benefit district in a newspaper of general circulation, contained in section 5.

"9. The provision, in said section, for publication of the above notice by posting.

"10. The change with respect to the date of valuing property added by an amendment to the original ordinance, contained in section 5.

"11. The granting of authority to examine witnesses under oath, contained in section 5.

"12. The requirement that the commission make findings of fact upon the direction of the court, contained in section 5.

"13. The empowering of the Board of Aldermen to give a period of grace after the filing of judgment before the benefit assessments need be paid, contained in section 8.

"14. The clarification of the prior requirement that a new suit shall be instituted only upon petition of three-fifths of the owners by providing that the proportion be determined by front footage, contained in section 10.

"15. The provision for estimates of benefits and damages by the Board of Public Service, contained in a new section 1-a.

"16. The provision for the payment of benefits in installments, and the issuance of anticipation bonds, contained in new section 17.

"17. The provision for selling the benefit judgments, contained in section 18.

"18. The provision for dividing the assessment when an owner of a tract sells a part of the tract to another party, contained in section 19."

At the time of the enactment of the ordinance providing for the submission of the proposed amendment, the article sought to be amended related solely to procedure for the acquisition of private property for public use. The sections of said article were naturally related, dependent on one another, and provided the steps to be taken to condemn private property. In providing said procedure it was proper to submit the article as one proposition. If so, it was proper to submit the proposed changes in the article as one proposition. On the ratification of the amendment the changed sections and the new sections became a part of the article, and with the other sections continue to provide the steps taken in condemnation proceedings. In effect, the ratification of the amendment was a repeal of the article and its reenactment with the new sections and the sections as changed. The new sections and the changed sections relate to the subject of the article. The submission was not a fraud on the voters. It was a resubmission of the article as amended.

Of course, each new section and each changed section of the article could have been submitted as a separate amendment. Therefore, respondents contend that the ratified amendment is void, citing State ex rel. v. Powell, 77 Miss. 543, 27 So. 927. If the opinion in that case so rules, it is in conflict with the great weight of authority. It was cited in State ex inf. Barrett v. Maitland, 296 Mo. 338, l. c. 359, 246 S. W. 267. In that case we said that the Powell case involved "an amendment to a state constitution, and it was held that there were many questions involved in the single amendment, upon which the people had a right to vote separately." This reference to the Powell case was not an approval of the rule contended for by respondents. The mere fact that the proposed changes could have been submitted as separate amendments does not invalidate the amendment as submitted. If the sections of the article as amended are naturally related, a submission as one amendment was proper and legal.

Respondents also cite: State ex rel. Pike County v. Gordon, 268 Mo. 321, 188 S. W. 88; State ex rel. Joplin v. Wilder, 217 Mo. 261, 116 S. W. 1087; State ex rel. Chillicothe v. Wilder, 200 Mo. 97, 98 S. W. 465; State ex rel. Bethany v. Allen, 186 Mo. 673, 85 S. W. 531; McBee v. Brady, 100 Pac. 97, l. c. 103; City of Denver v. Hays, 28 Colo. 110, 63 Pac. 311. In those cases it was clear that separate and distinct propositions were submitted as one amendment.

 ˙ Respondents also contend that the amendment is void for the reason the ballot did not show the character and purposes of all the proposed changes in the article. We do not think so. The ordinance providing for the submission of the amendment was published in the paper doing the city's printing. Furthermore, the notice of the election and the proposals to be voted upon were twice published in the St. Louis Globe-Democrat, St. Louis Post-Dispatch, St. Louis Star-Times and Westliche-Post, daily newspapers of general circulation in the city. The regularity of the publications is not challenged. It follows that the voters must be charged with knowledge of the character and purposes of the proposed changes. The rule is stated as follows:

"The law requires that the proposed amendment be published in the session acts of the General Assembly at which they were proposed, and in a newspaper in each county for four consecutive weeks, and two or more copies printed in great primer poster type, posted at each voting place. It is by those methods that the people are to be informed of the precise meaning of the proposed amendments. The indication to be placed on the ballot is not designed to give that minute information, but only to inform the voter in a very general way of the subject. When, as in the last election, there are several amendments to be voted on, the voter would not be apt to remember each by its number and so to prevent confusion or mistake he is informed by the ballot that the first relates to making information and indictment concurrent remedies; the second to providing for the levy of a road and bridge tax; the third to provide that the value of property subject to mortgage, deed of trust, etc., shall be assessed, etc. That method simply distinguishes one proposed amendment from another, if there are more than one, and whether one or more, calls the general subject to his attention." [Russell v. Croy, 164 Mo. 69, l. c. 96-97, 63 S. W. 849.]

In State ex rel. Highway Commission v. Thompson, 323 Mo. 742, 19 S. W. (2d) 642, l. c. 645, the ballot submitting the amendment for an additional road bond issue of seventy-five million dollars was held to be sufficient under the law, although it did not furnish detailed information of the proposed amendment.

And in Goolsby v. Stephens, 155 Ga. 529, l. c. 539, 540, 117 S. E. 439, 444, it is said:

"It was not necessary that the entire amendment should have been printed on the ballots. The reference on the ballots to the proposed amendment is to inform the voters what they are voting for as an amendment to the Constitution; and such reference is sufficient when it contains enough to enable the voters to ascertain for what amendment they are voting. When this is done, the voters can be fully informed as to its full provisions by looking to the proposed amendment."

To the same effect, State ex rel. v. City of St. Louis, 319 Mo. 497, l. c. 510, 511, 5 S. W. (2d) 1080; Jones v. McDade, 200 Ala. 230, 75 So. 988; Cudihee v. Phelps, 76 Wash. 314, l. c. 327.

Respondents cite State ex inf. v. Maitland, 296 Mo. 338, l. c. 356, 246 S. W. 267. It sustains this contention of respondents. However, the ruling on the question in the majority opinion in that case is contrary to the weight of authority and in conflict with decisions of this court. It should not be followed. The question is ruled correctly in the dissenting opinion, l. c. 369 of 296 Mo., 246 S. W. 275.

Respondents also contend that Section 19 of the amendment vests in the commissioners judicial powers to determine the interests of persons jointly interested in land against which benefits are assessed, and for that reason said section is unconstitutional. The section follows:

"Whenever title to distinct portions of any lot or parcel of property assessed benefits in accordance herewith, shall vest in different owners, on application in writing of any one or more of such owners, the board of commissioners first having given notice by mail addressed to the owners in fee, if known, of the other portions of said property, at their last known address, shall determine the amount of said assessment chargeable to such distinct portion in accordance with the original assessment; and the parties charged with the collection thereof shall accept payment of said amount with interest due thereon. The lien of the judgment shall then terminate as to such portion, proper entries whereof being made on the records of the court."

The question need not be ruled. The section is severable. If eliminated, the article as amended provides a complete procedure for the condemnation of private property.

The alternative writ should be made permanent. It is so ordered. All concur.