STATE ex rel. NATIONAL ADVERTIS-
ING COMPANY, Appellant,

v.

STATE HIGHWAY AND TRANSPORTA-
TION COMMISSION of the State of
Missouri, Respondent.

No. WD 36802.

Missouri Court of Appeals,
Western District.

Dec. 3, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
Jan. 28, 1986.

---

Stephen G. Newman, Hawkins, Brydon & Swearengen, of counsel; Jefferson City, for appellant.

Bruce A. Ring, Chief Counsel, Dennis J. Redel, Asst. Counsel, Missouri Highway and Transp. Com'n, Jefferson City, for respondent.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

PRITCHARD, Judge.

This case involves the order of removal of two advertising signs adjacent to Interstate Highway 44 in St. Louis County upon the ground that they were in violation of § 226.540(3)(a)a. RSMo 1978, relating to the spacing of signs erected after March 30, 1972: "No sign structure shall be hereafter erected within five hundred feet of an existing sign on the same side of the highway."

The previous enactment of this billboard law, § 226.540 RSMo 1969, provided that no two sign structures facing in the same direction could be spaced less than 150 feet apart unless separated by a building, structure or roadway. In February, 1972, the United States Secretary of Transportation determined that this billboard law did not provide effective control and ordered the imposition of a 10% penalty upon the receipt of federal funds by Missouri. The

Secretary, however, agreed to defer the penalty until March 31, 1972 if Missouri would enact more effective legislation. Hence, the General Assembly enacted Senate Bill 382 on March 30, 1972, which was signed by the Governor on the same day and which was codified by § 226.540, RSMo 1978. The original bill had an emergency clause, stated in its preamble, " 'Because it is imperative that Missouri meet certain federal requirements, and because Missouri will not be able to participate in certain federal programs until additional legislation is adopted, and because this bill will make it possible to meet those requirements, this act *is deemed necessary for the immediate preservation of the public health, welfare, peace and safety,* and is hereby declared to be an emergency act within the meaning of the constitution, and this act shall be in full force and effect upon passage and approval. Laws of Mo. 1972 p. 863.' " [Quote excerpted, with italics added, from *Osage Outdoor Advertising, Inc. v. State Highway Commission,* 687 S.W.2d 566, 569[4] (Mo.App.1984).] This preamble follows that prescribed for emergency measures in Const.Mo. Art. III, § 29, and § 1.130(1), RSMo 1978, and if it is truly an emergency measure it does away with the ninety-day effective date of an Act after adjournment of the General Assembly, but the Act becomes effective upon passage and approval.

Appellant does not posit its Point I upon a ground that the emergency clause is invalid, which, if so, would deprive this court of jurisdiction. The contention, however, comes close to a charge of invalidity of the March 30, 1972, enactment in that it is said that respondent could not use or apply the new enactment as an emergency measure because it does not relate to the immediate preservation of public peace, health or safety, within § 1.130(1) RSMo 1978, which are also exceptions to the referendum power of the people, to be exercised by them within 90 days after the adjournment of the session of the General Assembly under Const.Mo. Art. III, § 52(a). It seems to be the result of appellant's argument that because there was no true emergency, the

March 30, 1972 enactment could not become effective until 90 days after March 30, 1972, thus giving them time lawfully to erect the two signs, which were on lands previously leased and contracts for erection of the signs had been executed. Apparently, the signs were erected within that 90 day period. [Respondent concedes in its brief that had the signs been erected between November, 1971, and March 30, 1972, appellant may have been entitled to maintain them as lawful nonconforming signs.]

Cited by appellant is *Hatfield v. Meers,* 402 S.W.2d 35, 41[3] (Mo.App.1966), which, with cases cited, holds that the invalidity of an emergency clause does not void a statute but merely postpones its effect as a nonemergency measure. Thus, this court will take the point as contended by appellant—that it is the *use* of the emergency clause within the 90 day period which makes the order of respondent that the signs be removed without compensation erroneous. Respondent says that the issue was not raised before it, and that appellant has therefore waived its presentment to the trial court. Necessarily, the new enactment had to be applied by respondent to the facts of this case, and therefore its use to determine the lawfulness of the removal order has to be in the case, and it must be considered.

Appellant cites many cases holding that varying legislative enactments were not emergency measures where there was no serious threat to the public peace, health and safety, and relies principally on *State ex rel. State Highway Commission v. Thompson,* 323 Mo. 742, 19 S.W.2d 642 (1929). Relator there sought mandamus to require the State Auditor to register bonds for state highway construction which had been authorized by a legislative act containing an emergency clause. The court held that under the constitutional exception provision [now Art. III, § 52(a) ], the law was not one making appropriations for the current expenses of the state government, for the maintenance of state institutions or for the support of public schools. The court

said, page 647[8, 9], "The early completion of the state highway system, the reimbursement of counties for money expended on the state highway system, the relief from congestion of traffic in areas adjacent to St. Louis and Kansas City, and a beginning of supplementary state highways in counties, are all desirable, and when accomplished will no doubt greatly contribute to the public welfare, and *indirectly* promote the public peace, health and safety. But it cannot be affirmed that any of these things are necessary for the *immediate* preservation of the public peace, health or safety. (Citing cases.)" It seems that the Thompson court, in holding that the bond issuance act was not an emergency measure, required that the act be held in abeyance until the possibility of a referendum within the ninety day period had passed. In any event, the facts there, in 1929, and these here are inapposite. There was then no *immediate* requirement that the state highway system be completed, nor that counties be reimbursed *immediately* for moneys already expended, nor that there be *immediate* relief from traffic congestion in urban areas, nor to begin a supplemental state highway system in counties. Here, the situation is different than then. Congress had passed the Federal Highway Beautification Act of 1965, requiring states to regulate outdoor advertising structures within restricted areas, or be penalized 10% of their federal highway appropriation. See the history of the Act recounted in *National Advertising Co. v. State Highway Commission*, 549 S.W.2d 536 (Mo. App.1977).

▉ In 1929, the population of Missouri was slightly in excess of 3.3 million persons. Official Manual of Missouri, 1929–1930, p. 600. According to the 1983–1984 Official Manual, page 1211, the population had increased to more than 4.9 million, and had increased between 1970 and 1980 by 8.8%, to more than 5.3 million. It is also stated in the 1929–1930 Official Manual that the total road miles travelled on Missouri highways in 1928 was 4,974,000, and that the 7,640 miles of the state highway system was about half completed. In con-

trast, the 1983–1984 Official Manual states that more than 32,000 miles of state highways have been constructed and improved through the years, and as of the end of 1982, the total road miles travelled was 32,195,719. Thus, it is apparent that the situation in 1929 when the Thompson case was decided is vastly different from the standpoint of public safety than it is now. The present extensive system, as is common knowledge, requires constant new construction of highways, and on-going repairs and maintenance, all of which relate directly to the public safety of citizens who travel the highways constantly and in ever-increasing numbers. It is that safety which is obviously of concern to the Legislature in enacting the foregoing emergency measure. The Secretary of Transportation had threatened to cut off 10% of the federal funds if Missouri did not enact legislation effectively to control billboards to comply with the federal act and regulations, and would have done so immediately on March 31, 1972, had not the legislation been enacted the day before. The loss of these funds, perhaps amounting to millions of dollars, would directly affect the safety of the travelling public, and thus the enactment of March 30, 1972, must be deemed to have been a true emergency measure, and appellant's Point I, contending to the contrary, is overruled.

▉ Appellant purports to raise constitutional issues in Points II and III, respectively, that respondent's decision constitutes a taking of appellant's property without just compensation and is a deprival of the same without due process of law; and that the decision impairs its obligation of contracts (leases and for construction). Respondent contends that these issues were never presented to it for consideration, which is the first available opportunity to do so. Respondent would not have had jurisdiction to do so, because its adjudicative power extends only to the ascertainment of facts and the application of existing law thereto in order to resolve the issues presented. *State Tax Commission v. Administrative Hearing Commission*,

641 S.W.2d 69, 75[10, 11] (Mo. banc 1982). Thus it is sufficient to properly present these issues in the petition for review before the circuit court which does have the power to adjudicate them. But in this case, the petition for review does not cite the constitutional provisions relied upon or give the section numbers, nor state the reasons why the decision complained of is violative. *City of St. Louis v. Butler Co.,* 358 Mo. 1221, 219 S.W.2d 372, 380 (1949). Nevertheless, appellant's brief fleshes out the contentions, and although without doubt not perfectly preserved for review, they will be considered *ex gratia.*

■ Apparently, appellant is contending that the *existence* of its land leases for the signs was in effect prior to the effective date of the emergency amendment, and thus must be accorded a nonconforming status for which just compensation must be awarded for their removal. The billboard act is a statewide zoning law which is a valid exercise of the state's police power. *Boyce Industries, Inc. v. Missouri Highway and Transportation Commission,* 670 S.W.2d 147, 150[4–7] (Mo.App.1984). As a valid exercise of the police power, the enactment here does not infringe due process rights. *Brawner v. Brawner,* 327 S.W.2d 808 (Mo. banc 1959); *Passler v. Johnson,* 304 S.W.2d 903 (Mo. 1957). Furthermore, for a sign to have nonconforming use status, it must have been in existence prior to the enactment of the act. These signs were not erected until after the effective date, March 30, 1972, of the emergency measure, and thus they were not in existence. *State ex rel. National Advertising Co. v. State Highway Commission,* 624 S.W.2d 453, 463 (Mo.App. 1981). As to the second constitutional contention, the signs, not having nonconforming status and being illegally erected, must give way to the police power of the state, and thus there is no viable issue of impairment of existing contracts. See *State ex rel. Kansas City v. Public Service Commission,* 524 S.W.2d 855, 859[3] (Mo. banc 1975). Points II and III are overruled.

The judgment is affirmed.

All concur.